No. 11,081.

## TUTORSHIP OF THE MINOR HEIRS OF J. J. AND S. L. HOLLINGS-WORTH.

1. The tutor who assumes the ownership of the interest of his wards in movable property owned by him with them in indivision is bound for the payment of the value of the interest. A just medium between the two extremes is a safe guide in determining the value of the property.

2. The amount for which other cotton plantations in the vicinity were rented is a fair criterion of the value of the rent of the plantation in which the opponents own one undivided third interest. It has a character of permanence and is not variant and discordant, as are mere estimates.

 The account of the tutor must be full and complete, and can not be amplified, as an account, by verbal testimony. He presents it to the court as a complete account. It can be amended in writing; but the heir is not cited to answer a verbal account to be developed by oral testimony during the trial.

3. Minors who are kept occupied by their tutor to teach them habits of industry and prevent them from growing up in idleness can not exact compensation of the tutor.

4. The amount charged the tutor touching taxes on personal property is reduced to the proportion to which opponents have the right to recover.

5. In computing interest the tutor is charged with interest on rentage and on the rentage capital in his hands at legal rates. He is allowed credit of interest at legal rates on all disbursements and indebtedness from their respective dates. There is no compounding annually of interest.

6. The tutor is entitled to 10 per cent. commission on the amount of revenues of his pupils arising from 5 per cent. interest on the pupils' funds in his hands, from rentage and other sources of revenue; but not on cash sales of personal property and cash collected on notes inherited by the minors.

7. A tutor's counsel fee in rendering his account is part of the expenses chargeable to his wards and will be allowed, if reasonable, for counsel employed by him to render his account and have it homologated.

 Costs: The opposition, in the nature of an answer, was maintained in part; costs are due by the opponents.

8. Partnership claims antedating the tutorship can not be settled with the tutorship. The issues are not germane; they are separate and distinct and must be settled in other proceedings.

APPEAL from the First District Court, Parish of Caddo.
Taylor, J.

—

*Alexander & Blanchard* and *Thos. C. Barret* for the Tutor, Appellant:

Tutor's account, of his administration of minors' affairs for fifteen years, filed all at one time, must be construed as a whole—not year by year, as contended for by opponents, though for convenience made out by the year. A knowledge of a tutor's entire administration is necessary to a correct decision on his account. H. D., p. 921, No. 9 (last 9), 7 An. 151.

The account, made out by the tutor and filed as his showing of how he has administered the estate of his wards, must be read and construed by the light of the tutor's testimony given in reasonable explanation thereof, and where the tutor testifies that in allowing the minors rent for property owned in indivision by them and him he took into consideration the facts that he had entered up no charge against them for general repairs on the place, and had charged much less than their share of the cost of improvements, clearings, etc., effect must be given to this testimony.

Charging less for improvements and nothing for repairs, the tutor debited himself with less for rent, which is the same thing as charging the minors with their share of the annual repairs and more for improvements than was charged.

If more rent is to be allowed opponents, it opens the way to the tutor to ask the court to consider his claim for general repairs and for a greater allowance for improvements. Any other view would work manifest injustice to the tutor.

The court a qua erred in refusing this. Tutor can set off additional claim for rent by additional claim for improvements and by claim for general annual repairs, even though not specifically claimed in the account filed. All allegations of answer (opposition) open to every objection and defence of law and fact— even set-off and compensation—may use as shield of defence what can not be used as weapon of offence. 13 An. 412; 11 An. 547; 11 An. 386, 671; 12 An. 578; 14 An. 670; 8 N. S. 141; 33 An. 438; 4 An. 140; 3 N. S., 695; 5 N. S. 500; 12 An. 164; .14 An. 868.

The case of a tutor owning property in indivision with his wards is to be differentiated from a case where their property is separate from his. If separate from. his, C C. 337 applies, and he can not lease or hire it himself.

---

*Wise & Herndon* for Opponents and Appellees.

---

The opinion of the court was delivered by

BREAUX, J. The heirs of J. J. and Sailie Lee Hollingsworth oppose the account and supplemental account tendered by their tutor.

Their father died in 1873, and in the latter part of 1875 their mother died.

At the death of their mother in October, 1875, the three boys went to live with Col. J. M. Hollingsworth, their uncle, and the two girls, from that time, resided with their maternal grandfather, Dr. Lee.

When the mother died the oldest of the five heirs, J. J. Hollingsworth, was about eight years of age.

The father of these minors was engaged in planting operations with his brother, the present accountant, in the name of J. M. & J. J. Hollingsworth, and the partnership was continued by the widow.

It was understood among the relatives of the minors that their uncle, Col. Hollingsworth, should become their tutor. The record discloses that an application was made in June, 1876, by the maternal grandfather and their uncles for his appointment.

An order of court issued, dated June 19, 1876, to take an estimative inventory.

No inventory was produced on the trial, nor any bond, certificate of registry, oath, letters of tutorship or order of appointment; nor was there any testimony introduced to prove that an inventory was taken and that the formalities attending the appointment of a tutor had been complied with.

J. J. Hollingsworth having reached his majority in 1890 was appointed under-tutor to his minor brothers and sisters.

In his own name and as under-tutor he a short time after petitioned for an order directing the tutor to file an account of his administration of his tutorship.

He charged in his petition that the tutor had taken possession of plantations, money, stock, Shreveport city property, retained possession of this property and had never filed an account.

The tutor having been so ordered filed his account and supplemental account in 1891.

His account shows that the heirs inherited the following:

1. The "White Hall" plantation, an upland place in Caddo parish of 1300 or 1400 acres.

2. An undivided half interest in the plantation known under the name of "Furman."

3. An undivided one-half interest in nine acres of land in suburbs of Shreveport, and the buildings thereon.

4. An undivided one-third interest in 790 acres of land on Red river, in Bossier parish.

5. The movable property on "White Hall" place was sold at public auction and brought the sum of $2411.

6. An undivided one-half interest in movable property on the Bossier plantation, retained by the tutor without legal proceedings, estimated by him, ex parte, at $1375.

Money on hand $1773.45.

The Furman place was sold by the partnership of J. M. & J. J. Hollingsworth on terms of credit.

Part of the notes representing the purchase price was collected after the death of the latter, amounting to a comparatively considerable sum, and the minors were given credit for their portion.

Only 280 acres of the land, included within the tract sold, was paid for. The remainder became the property of the surviving partner

and of the opponents, and is now held in indivision by them. The administration of the tutor, in so far as relates to this plantation, is not opposed; nor in so far as relates to "White Hall" plantation.

The property as valued by the tutor and the cash on hand amounted to $21,059.45.

With reference to the real estate the evidence discloses that it has enhanced in value since the tutor assumed possession, and that in that respect, at least, the interests of the minors have not suffered.

In the absence of an inventory, or of documents, or written contemporaneous enumeration and valuation of the property, the preponderance of testimony as to its value must be ascertained.

The accountant was treated as tutor; he accounts in that capacity and the opposition is leveled against him as tutor.

He is responsible for the value of the property, the ownership of which he assumed, and for interest.

J. J. Hollingsworth, individually and as under-tutor of his co-heirs, opposed the account on a number of grounds, which are limited by their counsel in the brief and oral argument to the following:

1. That the tutor has failed to account, at its true value, for all the personal property belonging to the partnership once existing between the tutor and J. J. Hollingsworth, their father.

2. That he has not allowed them a sufficient sum as rent for their undivided half interest in property situated in the parish of Bossier.

That the amount he has charged for board and lodging should be reduced.

That he has charged them with taxes on property exclusively his.

They claim a larger amount of interest; oppose attorney's fee and the costs as charged.

In their answer to the appeal they pray for amendment of the judgment in certain respects, which will be decided with other questions of the case.

We will consider the grounds in the order presented.

*Half Interest in Movables on the Bossier Plantation, and their Value.*

• The tutor charges himself with half of the value of eighteen mules, at $100 each, on this plantation in March, 1876.

The opponents claim one-half of the value of thirty mules, at $126 each.

The court *a qua* fixed the number at twenty-one, and their value at $1323.

It is urged by the tutor that there were not thirty mules on the place, as decided, and that a larger number should be deducted of tenants' mules.

The weight of the testimony proves that there were two Irish tenants on the place, and that each owned two mules, and that colored laborers owned five; that the number altogether was thirty, from which the nine were correctly deducted, leaving twenty-one.

*As to their value.* A witness—the only witness of opponents who has placed an estimate from personal knowledge upon their value— says that they were ordinary plantation mules.

Mules, he says, were in demand.

He estimates that they were worth from $130 to $180 each.

The tutor charges himself with $100 each, and testifies that it was their value.

The lower court fixed their value at $126 each.

We reduce their value to $115, thereby adopting a medium between the two estimates.

| | |
|---|---|
| One-half value of twenty-one mules, at $115 | $1207 50 |
| Interest from March 30, 1876, to March 16, 1891 | 898 06½ |
| Total | $2105 56½ |

Two thousand one hundred and five and fifty-six-one-hundredths dollars.

### Rent for the One Undivided Third of Bossier Plantation.

The tutor credits the opponents with $500 per annum for value of the rent of opponent's one-third in this plantation, from 1876 to 1891, both inclusive.

This credit is accepted by them for the years 1876, 1877, 1878 and 1879. They claim $1000 per annum for the remainder of the years to and including 1891.

Two-thirds of the plantation is owned by the tutor individually.

He cultivated the whole place for his individual account.

No attempt was made to divide the property, nor to lease it.

The tutor's obligation is to pay the value of the interest cultivated by him. Succession Trosclair, 34 An. 326; Vance vs. Vance, 32 An. 188.

The learned judge of the District Court fixed opponents' interest in

the tillable land at 207 acres, and condemned the tutor to pay at the rate of $4.80 per acre from 1880, inclusive, to 1891, inclusive.

We do not hesitate to accept his figures as to the number of acres of tillable land, but our conclusion as to the value of the rent leads us to fix a lesser amount for rent.

The evidence upon the subject is confusingly conflicting.

The question is not confined to the value of the rent as an independent proposition.

There is testimony of record to prove the date at which part of the land was cleared, and the added benefit thereby; also to prove the different qualities of the soil, whether sandy, mixed sandy, or stiff clay, in regard to which opinions greatly differ, as well as in regard to the rent value of each grade.

The fertility of the soil was necessarily compared with that of other plantations, and the rent value of other lands.

The rent value of other places of which the tutor was individually the lessee was also specially considered, and all enter into the discussion in determining the value of the one undivided third of this plantation.

The extreme views do not recommend themselves as safe guides to follow.

To establish a just medium shall be our endeavor in analyzing the testimony transcribed in three voluminous transcripts.

### Rent Value for 1880.

The interest of opponents in 1876 in the cultivated lands of this plantation was about eighty-three acres, and in 1880, owing to new clearings, it had increased to 207 acres—that is, since that year the plantation has embraced a tilled area of 647 acres, less twenty acres embraced in a lake.

The opponents contend that the clearing, building, ditching began actively in 1876, and that they were continued on a small scale until 1879-80, and that the bulk of the clearing being done in 1879, thus adding 376 acres to the cultivated land on the place, they have a right to a proportionate increase in the rent from 1879.

The tutor contends that as to 1880, at least, the rent should not be increased.

The number of acres cleared each year is not proven.

To give it rental value lands have to be cleared and improved. If

only a limited number of acres was cleared in 1880, the rent value of the land during some time thereafter was inconsiderable.

J. M. Foster, a successful planter, of large experience, testifies that the first year after clearing, land has no rental value, and that he charges but small rents for several years after.

This testimony supports the item for rent in the account for the year 1880, which is properly credited at $500.

The amount to be deducted this year is $500 from $931.50 = $431.50 plus interest from 1st January, 1881, $220.12; total $651.62.

*Rent value 1881-1891, both inclusive.*

To opponents' contention that the sum since 1879 should be increased, it is objected by the tutor that he fixed an average rent per year, for the whole term, instead of so much for 1876, 1877, 1878, 1879 and 1880, when they had less open land and so much per year for the years following 1880, when there was a larger area in cultivation; in other words, that he divided the total for rent by the number of years without reference to the years he cultivated less lands, and that he has a right to credit of the amounts larger than he should have charged himself for rents prior to 1880, as a set-off against any increase of the amount allowed in the account for rent since.

Further, that he charged them much less than their share of the costs of improvements and clearing, and had not entered up any charges against them for general repairs.

That if more rent is to be allowed to the opponents, it opens the way to the tutor to have his claim considered for general repairs and for a greater allowance for improvements than that charged; that he can set off additional claim for rent by additional claim for improvements and by a claim for general annual repairs, even though not specially claimed in the account filed.

A number of cases are cited as decisive in point and as maintaining the tutor's contention.

They all, except two, refer to actions between individuals and maintain that in pleadings the plaintiff need not deny the facts pleaded in avoidance of his claim, in the answer, in order to be admitted to disprove them, and that he may resort to the exceptions of nonage, coverture, violence, fraud and the like without pleading them.

The two excepted cases are: Succession of Lerude, 11 An. 386; Succession of Aaron, 11 An. 671.

In the former it was held that oppositions in such cases are open to such objection as those we have just stated; in the latter that the administrator may offer evidence to show that the opponent has appropriated property to her use belonging to the succession of her husband.

The administrator or tutor must present in writing full and complete account of all moneys received or paid by him, and of all property of the estate; it should set forth an accurate history of his administration. Rauls, Tutrix, vs. Rauls, 6 An. 685.

The heir is not cited to answer an oral account or an account to be developed by oral testimony during the trial.

A demand can not be increased without amending the pleadings. C. P. 156.

We know of no rule of law whereby property charged in an account as worth $4000 can be increased, as to its value, outside of the account, in order to extinguish proven liabilities.

In thus deciding we do not eliminate from consideration the general favorable state of the plantation, nor the fact that the rent covers a term of years, during which the tutor has kept the plantation in excellent repair.

It is abundantly proven that the land, the field implements, the stock and the building improvements are in the best order and condition. These facts are inseparable from the value of the rent. The witnesses differ as to the quantity of land embraced in each of the different grades of land in the plantation.

The variance is from one-third to about one-half—i. e., there are witnesses who testify that only one-third of the area is stiff clay land of an inferior quality, and others testify that it is nearly one-half.

The number of witnesses thus testifying is about equally divided. The rent value of this stiff inferior land is $1.50.

The area, if large, at that rate would lessen materially the rental value of the whole place.

The contradictory testimony as to the quantity of land does not abate when the witnesses testify as to the value of the rental.

It ranges in amount from $1.50 an acre to $10.

It compels us to rely chiefly on rental value of leases that have ac-
tually been made of lands in the vicinity.

The class of facts these leases present suggest more certainty than
mere estimates.

The amount paid by a number of lessees is proven.

The amount at which one of the places was leased was as low as
$2.00 per acre, and the highest $3.50 an acre; the lessees kept up
the repairs.

The other contracts of lease were for larger rental; the lessees had
not bound themselves to keep up the repairs and the leases were for
comparatively short terms.

Taking as a basis those places leased as to which the lessees had
bound themselves to keep up the repairs we fix the value of the rent
at $2.75 per acre.

The annual rent on the plantation is therefore $569.25; $362.25
less than amount allowed in the judgment. The interest on this
last sum, which must be deducted from the judgment, together with
said sum, is $4862.32.

### Board and Lodging of Three of the Minors.

The boys are charged with board and lodging at the rate of $15
per month.

The amount of the board per month is not objected to, but the
opponents complain that the tutor has not given them full credit for
their absence from home.

The account begins October 2, 1876.

The two girls never lived at their tutor's; no charge is made against
them for board.

In the account it appears by the charges that the boys lived with
their uncle and tutor from *October 2, 1876,* to *October 2, 1883;* and
that from *October 2, 1883,* to *October 2, 1887,* only *two* lived with
him; and from October, 1887, to October, 1888, one boy boarded
with him during twelve and the other during nine months. From
October, 1888, to October, 1889, board is charged to but one boy;
and from October 2, 1889, to April 2, 1890, it is charged to one for
six and to the other for three months. From April, 1890, to Feb-
ruary 25, 1891, it is charged to one boy for six and to the other for
three months. From April, 1890, to February, 1891, it is charged to
one boy for three months of the year 1890.

The total charged for board is $6390. The following item appears in the account: "By deduction on board of boys for absence not allowed in former entries, $900. In conformity with this entry this sum must be deducted, leaving $5490 to the tutor's credit on the board account.

With reference to the last amount the opponents contend that it is larger than the amount actually due.

Evidence was heard; the preponderance maintains the opposition and the judgment of the lower court in this respect.

The $900 can not be applied to the satisfaction of the additional absences proven, for they are not absences not allowed in former accounts and were not referred to when the entry was made.

The time of the absences or the names of the absentees is not disclosed by the entries, nor by the evidence, therefore no alternative is left but to deduct it from amount of absences not allowed in former entries—i. e., from the total amount charged.

The district judge reduced the claim for board for the years 1878, 1879, 1880, and eleven months of 1881, by deducting therefrom $180 for each of the years 1878, 1879 and 1880, and $165 for eleven months of 1881, which appears correct to us.

In oral argument it was stated that one of the minors had rendered services at least equivalent to the board charged him.

The tutor testifies that he considered it his duty to keep them occupied; to teach them habits of industry; to prevent their growing up in idleness.

The question was decided in Hebert vs. Hebert, Manny's Unreported Cases, 214, from which, in this case, we find no reason to depart.

### Taxes.

The next complaint in the order of the opposition is that the tutor has charged to opponents certain taxes paid by him on his individual personal property in Caddo and Bossier parishes.

The tutor explains that in the assessment of the land were included assessments on personal property which belonged to him individually.

That he had paid taxes for the same years upon real property in his name in Arkansas, in which the minors have an interest, for which no charge had been made against them.

He also had paid insurance premiums upon the property in Shreveport and in the  gin house in Bossier, for which no charge had been made against the minors, and these items he considered fully set off the amount debited against them on account of the tax on his  personal  property.

These claims are  not  carried on the account.  They  can not be  allowed in the manner proposed.

The interest in the places in Arkansas is separate and distinct; as to the other claims they are not subject to consideration, not being charged.

As to the amount deducted of these taxes of the tutor individually, it is objected by him that he was erroneously debited with the full amount of such taxes; it should be, he  states, one-third for Bossier and one-half for Caddo, for the minors have been  charged in that proportion.

It is stated in opponents' brief that the tutor charged his wards with one (1-3) third of the personal property tax in Bossier and Caddo parishes and city of Shreveport.  The amount was larger, but it contains nevertheless an admission that the tutor did not charge his wards the *whole* of said tax.

In deducting the taxes erroneously charged on the personal property of the tutor he has a right to a credit back of one-half on the Caddo taxes and one-third on the Bossier taxes, being an amount overcharged.

This also applies for correction on alleged erroneous charges on the personal property listed in Bossier parish in 1877.

It was assessed for taxes of that year and was not excepted as claimed by the tutor, for the tutor was charged a personal property tax for that year, as held by the judge below—and as made to appear by the assessment roll.

Deducting one-half of part of the tax, and interest of that assessed in Caddo and in the city of Shreveport and one-third of the tax and interest for Bossier, we find $389.51 as the amount to be deducted.

### Interest  Account.

Opponents claim interest from year to year on the amounts due them.

The mode of computation is clearly laid down in Vance vs. Vance, 32 An. 186; Succession of Trosclair, 34 An. 326.

We quote from the first:

"As the tutor mingled the administration of the minor's estate with his own, cultivated it for his own benefit, the proper mode of computation is to charge him with rent of the lands, slaves and movables, and at the end of each year to charge him 5 per cent. interest in the amount of that year's rent."

This mode is approvingly referred to in the second case.

Interest was calculated on the active and passive side of the account. The tutor is in fairness and equity allowed the same rate of interest on all disbursements made by him for the maintenance and education of his ward, and for improvement of their estate from their respective dates, as he is charged with on rentals and on sum received by him.

A computation leading to a compounding of interest was rejected in Jarreau vs. Ludeling, 12 M. 106.

" The law requires the tutor to invest all amounts in his hands when and as often as they reach the sum of $500; but it does not say that in default he shall pay compound interest." Vance vs. Vance, 32 An. 186.

In this case, therefore, interest must be calculated from the respective date of indebtedness, and is not subject to be added to the capital at the end of each year.

### Tutor's Commission on Revenues.

The lower court allowed the tutor a credit of $2925.35 commission on receipts as charged in the account (in the restated account). It is contended by them that commission should not be allowed on an additional amount of $8026.15, as it represents cash sale of personal property, collection of notes, cash in hand, and not revenues.

The tutor is entitled to 10 per cent. commission on the amount of the revenues of his pupil.

Revenue is an amount accruing to the minor through the care and labor of the tutor.

In order that he may secure that commission it must be derived from crops, rent, interest. Certainly not amounts derived from sales or cash inherited.

The amount or $1377.83 being 10 per cent., commissions and interest thereon being allowed on cash sales, rent notes collected and cash

inherited, is deducted from the tutor's debits and placed to the credit of the minors.

### Fee of Attorneys and Costs.

The opponents oppose the allowance of $500 for lawyer's fees, and object to the judgment of the lower court condemning opponents to pay costs of the opposition on items not sustained.

We do not think that the amount is excessive. The interests are large and only this fee has been charged.

There are no good grounds to reject the claim for *costs*. The account as originally presented was not correct in all respects. It does not, however, disclose the least purpose on the part of the tutor to enrich himself at the expense of his wards.

He has not been in the least benefited by the absence of an inventory and other legal proceedings.

### Supplemental Account.

A supplemental account was filed some time after the original account.

It is opposed on the ground that this whole supplemental account s not connected or in any way involved in the administration of the tutorship, but is based upon transactions growing out of the business of Col. S. M. Hollingsworth and their father, who, in 1873 and prior, were conducting a planting partnership, and which was continued after the death of their father in 1873 by their mother until her death the latter part of 1875.

The items appearing on this account are partnership claims, which can not be brought into the settlement of the tutorship. The issues are not germane, they precede the tutorship, and must be settled in other proceedings.

We think the rights of the tutor should be reserved, and whatever claims he may have should form part of a settlement of the partnership.

### The Improvements.

In the brief of opponent's counsel reference *arguendo* is made to the amount charged for them. The objection is not included in the answer praying for amendment of the judgment. We have nevertheless given the matter attention, and have concluded that the amount allowed by the District Judge for improvements on the tutor's property do not present any ground for objecting.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended by deducting from it the difference between half the value of twenty-one (21) mules, as before stated.

And the difference in the interest, leaving total two hundred and two 12-100 dollars ...... .. ....................... ..... ..... ..... ........ ...................　..... ................ $202 12

By deducting on the rent allowed and the interest thereon, four thousand eight hundred and thirty-two and 39-100 dollars............................ ... ......... 4,832 39

And by deducting amount of taxes charged in error in the restated account, viz., three hundred and eighty-nine and 51-100 dollars ..... ............... .......... 389 51

$5424 02

That the judgment be further amended by increasing the minors' credits in the sum of thirteen hundred and seventy-seven and 83-100 dollars, being commission $802.61, interest $575.22=$1,377.83 ............................ ......... ...... 1,377 83

Leaving four thousand and forty-six and 19-100 dollars to be deducted from the judgment ($10,563.73—$4,046.19=$6,517.56)...................................... .. ...... .... $4,046 19

The judgment as amended is for $6517.56—six thousand five hundred and seventeen and 56-100 dollars.

Whatever rights the tutor may have to recover claims due him in settlement of partnership with J. J. Hollingsworth are reserved.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The judgment appealed from is amended, and as amended it is affirmed at appellee's costs.

### ON APPLICATION FOR A REHEARING.

Opponents, in their application for a rehearing, object in the first place to the reduction from $4.50 per acre per annum to $2.75 for rent of plantation 1881 to 1891, inclusive.

A number of plantations in the immediate neighborhood have been leased for less per annum than the amount allowed by this court.

The following land owners, cultivators or planters, W. C. Brownlee, J. C. Wimbish, W. C. Vance, D. E. Nicholson, J. M. Arnold and others, estimated the rental at less than the amount fixed by the court.

About an equal number of witnesses testified to a larger amount.

We gave weight to the testimony as to rental of other lands of about the same value and allowed as much for the lands in question.

In deciding the value of the rent the improved condition of the place could not be overlooked.

The opponents aver that " it is confessedly one of the finest on Red river."

During fifteen years the land was fertilized, drained and fenced at the tutor's individual expense.

The testimony shows that had it been rented out each year, or for a term of years, the rental would have been less, also the present value of the place. The second ground is not supported by the facts.

The $500 and interest for the rental of 1880 are a part of the judgment.

The amount of $931.50 was reduced to $500, and $431.50 plus interest was the amount deducted from the judgment.

It is urged by the opponents that if the court reduces the rent allowed to opponents then the tutor's commission should be reduced on said sum, which would give opponents a credit on that sum of $398.47.

The opponents in their answer to the appeal claimed a reduction of $802.61 in principal and $575.22 in interest; this was allowed.

Our attention having been called to the commissions allowed on the amount deducted from rent account, we have re-examined that issue and find that the amount deducted is not $3984.75, as stated by opponents, but $4832.39.

Without reference to the total, we have added each item of revenue on the debit side of the restated account.

```
They amount to ...................................... ..... ................................. ...............$23,177 21
Rents deducted ....... . ............. ....................... ..... ..................... ........... ...   4,832 39
                                                                                                    _____
                                                                                                    $18,344 29
```

Commission $1834.48, instead of $2122.74 as heretofore, leaving to be added to the judgment $288.26.

### The Board of the Minors.

A deduction of $900 was made from the account for board, as originally presented.

Considering this reduction and that the minor against whom the account was made out, it is shown, visited and remained at his tutor's home on Saturdays and Sundays; that he was sick and taken care of by the tutor at his home, we agreed with the district judge that the $84 charged for part of the time he did not board with the tutor should not be deducted.

The questions have been argued at length and the issues well defined.

The amendment is therefore made without granting a rehearing.

It is therefore ordered, adjudged and decreed that our judgment be and is amended by increasing the amount of the judgment by adding $288.26—i. e., from $6517.16 to $6805.42, the last amount being now the judgment of the court.

As amended the judgment remains undisturbed.