## No. 12,813.

### ELLA SIMS, WIFE OF WILLIAM H. JACKSON, TUTRIX, VS. ANNA BILLINGTON, WIFE OF CHARLES L. YOUNGER.

There are cases where the court is justified in inferring that improvements put up by a husband on his separate estate, during marriage, and paid for during marriage, and individual or separate debts paid for during marriage were paid through funds belonging to his separate estate, but the facts of cases of that character must be exceptional. Succession of McClelland, 14 An. 763; Succession of Boyer, 36 An. 509; Succession of Webre, 49 An. 1496.

Buildings and improvements placed by a husband on his separate property during marriage and paid for with community funds, do not become the property of the community—they belong to the husband, but payments so made give rise to a charge against his separate estate in favor of the community. The separate estate can not be charged with the cost of such improvements, but only with the amount that such improvements enhance the value of the property. Succession of Boyer, 36 An. 509.

The fees of attorney and all costs of the settlement of the succession of the husband, and consequent settlement of the community, are due by the succession and the community in proportion to the interest of each. Costs for the special benefit of one or the other are chargeable to that one. Succession of Webre, 49 An. 1491.

A tutor is entitled to ten per cent. commissions on the amount of the revenues of the minor, not upon the amount of the property, or the property and the revenues.

The expenses of the minor for board, clothing, tuition, etc., should not exceed her net revenues, unless under special authority given by a family meeting, that an additional amount should be taken from his capital. C. C. 350. Services rendered to the tutor and to his family by the minor should be taken into consideration in fixing a claim for board against her.

A tutor has the right to bring into his account and charge the minor with amount paid by him as the minor's proportion of the debts and charges of a succession in which the minor was an heir where the property of that succession has been partitioned between the tutor and the minor's co-heirs, and the tutor has received and charged himself with the minor's part of that property (which largely exceeded the amount paid out by the tutor) and the revenues thereof. The fact that the debts of that succession were not paid at the time of the partition is an immaterial circumstance, as in a. partition no partition is usually made of the debts, each heir remaining bound for his proportion thereof. C. C. 1371.

Sims, Tutrix, vs. Billington.

Community funds received by the widow after her husband's death, and prior to her appointment as tutrix of her minor child, must be accounted for in her account of tutorship. She is entitled to show that they were paid out for the benefit of the community.

The court can not compel the minor, without her consent, to receive in payment of claims due her by her tutrix, and by her step-father as her co-tutor, a store building placed by the latter on her separate property.

A tutor can properly claim credit for premiums of insurance paid on the residence building upon the separate property of the minor.

A tutor is properly charged in favor of the minor for all movables converted by him, with legal interest from date of conversion.

APPEAL from the Tenth Judicial District Court for the Parish of Avoyelles. *Cullom, J.*

*J. C. Cappel* for Plaintiff, Appellee.

*W. Hall, Joffrion & Joffrion* for Defendant, Opponent, Appellant.

Argued and submitted May 18, 1898.
Opinion handed down June 21, 1898.

This suit involves the settlement of the tutorship of Anna Billington, now wife of Charles L. Younger by her mother, Ella Simms, now wife of William H. Jackson, the said Jackson acting as co-tutor with his wife.

Incidentally connected with this suit is the settlement of the community of acquets and gains which existed between Ella Sims and her first husband, George W. Billington.

George W. Billington and Ella Sims were married on March 10, 1876.

George Billington died in April, leaving one child, Anna Billington, issue of his said marriage.

The widow, Mrs. Ella Billington, married William H. Jackson in February, 1881.

Up to that date no steps whatever had been taken toward opening the succession of George Billington, the widow having taken possession of all the property without legal proceedings.

On the 28th of September, 1883, she filed a petition in which, after reciting her second marriage, and that she had thereby forfeited her

right to the natural tutorship, she not having, prior to said marriage, taken legal steps to retain the same, she prayed that a family meeting be convoked looking to the appointment of a tutor to the minor, Anna. The meeting was held under order of court and recommended that the mother be appointed tutrix and her husband co-tutor. The court so ordered.

On the application of the tutrix an inventory was made in September, 1883, of the property belonging to and dependent upon the succession of George Billington and the community between him and his wife, Ella Sims. On this inventory the "home property" was put down as being the separate property of George Billington, no allusion whatever being made to the residence building upon the same. The property was valued at four hundred dollars.

An engine was also put upon the inventory as separate property, being valued at three hundred dollars.

An item of five hundred and twenty-three dollars and fifty-three cents was also placed upon the inventory as separate property, that amount of separate funds of the deceased being declared to have been received by the widow after her husband's death.

On February 10, 1897, the minor, Ella Billington, married Charles L. Younger. On the 13th of April following Mrs. Younger prayed that her mother and step-father be cited and ordered to file an account.

Before doing so the mother and step-father filed a petition in which they averred that the inventory was incorrect in some particulars. They prayed that a new inventory be taken, and it was ordered, and a new inventory was taken.

On this inventory the engine, which had figured before as separate property, was made to appear as community property. The "home property" was still put down as separate property and valued at four hundred dollars, but the residence and outhouses upon that property were put down as belonging to the community and valued at six hundred dollars.

A certain "store" building on that property valued at four hundred dollars, which Jackson had erected on the home place after his marriage, was declared to form no part of the property, either of the succession of Billington or the community, but to belong to the community between Jackson and his wife.

The item of five hundred and twenty-three dollars and fifty-three cents was dropped entirely from the inventory.

Anna Billington's grandmother, Rachel Billington, left a will which lapsed by reason of the renunciation of all rights there-under by the universal legatee. A suit was then brought in behalf of the minor, Anna Billington, by her mother as tutrix and her step-father as co-tutor, for the partition of that succession between Anna Billington and her aunt, Mrs. Hardie. A partition in kind was ordered to be and was made. No mention of the debts of that succession was made at the partition. The mother and step-father of the minor took possession of the property allotted to her, to-wit: two tracts of land and some movables. Mrs. Ella Sims, wife of Jackson, and Jackson filed an account under the order of the court through which was sought to be finally settled and liquidated all rights which the minor had in the separate estate of her father—in the community between him and his wife and in the succession of the grandmother, Rachel Billington—and to ascertain and terminate the responsibilities of Jackson and his wife as tutrix and co-tutor of Mrs. Younger. Mrs. Younger opposed the account in various particulars—she especially resisted the claim that either the engine referred to or the buildings upon the home place belonged to the community—she insisted that her mother and co-tutor should be charged with the value of the engine and interest, and with the item of five hundred and twenty three dollars and fifty-three cents with interest thereon from the date of her mother's second marriage; that they should be charged with rent of the home property at the rate of two hundred dollars per year and interest thereon, the rent to begin at the date of the second marriage; that they should be charged with the value of three horses and three cows and calves with interest thereon. She opposed a charge brought against her for board, tuition, clothing, etc., at the rate of seventy–five dollars a year from the date of her mother's second marriage, aggregating nine hundred and seventy-five dollars, and the claim made as for taxes paid on the property belonging to her; she opposed all claims advanced as for debts of her grandmother as having been paid by her step-father. Also all legal costs and charges and commissions; she opposed the claim advanced for premiums of insurance paid on the home residence.

The court disallowed the charge for nine hundred and seventy-five dollars for board, tuition, etc., and struck off from the account an amount of four hundred and fifty-five dollars for which accountants'

had charged themeslves for as the rent of the home place since
the date of the second marriage, holding that the use by Jack-
son and wife of the part of home place other than that on
which the "store" had been built was remuneration sufficient
for all claims for board, tuition, clothing, etc., but that rent
was chargeable for the use of the store site. It decreed, how-
ever, that in lieu of rent for that portion of the ground, the store
building itself, which was valued at four hundred and sixty dollars,
should be made to belong to Mrs. Younger. It decreed that the
tutrix should be allowed as a charge against the minor one-half
the value of the residence placed on the property of George Billing-
ton, and that an additional item of three hundred dollars be charged
on the final account against the minor—it decreed "that the item
appearing on the original inventory of five hundred and twenty-two
dollars and fifty-three cents and charged against the tutrix could not
be considered a legal charge against the tutrix, it being community
property, the same having been expended for community debts
amounting to three hundred and sixty dollars, by the tutrix, and the
remainder used for the support of the widow and minor prior to her
marriage with Jackson. It further decreed that the three hundred
dollars, which figured on the account as the price of an engine
which the widow had sold, were community funds and should be
divided equally between Mrs. Younger and Mrs. Jackson; the court
finding that the engine had belonged to the community. It decreed
the homologation of the account as so amended by it—decreeing
the costs to be paid by the succession.

Accountants filed in court a conditional acceptance and acquies-
cence in the judgment "in so far as the decree accorded the store
building of W. H. Jackson, valued at four hundred dollars, to oppo-
nent in lieu of rent," the condition affixed being that the judgment
as rendered should be accepted by Mrs. Younger or affirmed on
appeal, the building to be taken as a substitute for rent; in case of
reversal of the judgment they reserved all rights to urge ownerhip
of the store.

Mrs. Charles L. Younger appealed.

Appellees answered the appeal, praying "that the judgment of the
lower court, disallowing item two of the final account, amounting to
nine hundred and seventy-five dollars, for expenses of minor,
and the item of four hundred dollars, value of the store building,

separate property of W. H. Jackson, co-tutor, wherein the said building was decreed to the minor opponent in lieu of rent, be amended by allowing the said items as charged on said final account, and thus amended said judgmen'; be affirmed in all other particulars."

---

The opinion of the court was delivered by

NICHOLLS, C. J.   An examination of the evidence in the case satisfies us that the engine, whose price, after being sold by Mrs. Billington, was placed on the first inventory taken, as an asset of the separate estate of her husband George Billington, was properly placed there.   There is some conflict of testimony as to the date of its purchase, but we think it was bought in 1875, prior to Billington's marriage.   The entry on the inventory remained unquestioned as to its correctness up to the time that the minor called for an account, and during the intervening period the relatives of the minor specially familiar with the facts of the case have died.   Jackson and his wife were both present when the entry was made, and raised no objection when matters were fresh and disputed claims were susceptible of easy proof.   The court erred in decreeing the engine to have been community property, and the price thereof, three hundred dollars, to be community funds, belonging one-half to the opponent and the other half to her mother.   The engine was the separate property of George Billington, and the entire price of three hundred dollars belonged to opponent, and tutrix and her husband, W. H. Jackson, are chargeable with and must account for said amount *in solido.*

We are of the opinion, under the testimony as matters stand, that the residence building upon what is referred to herein throughout as the " home place " was erected upon it by Billington in 1878, after his marriage.   There is considerable doubt as to whether the lumber out of which it was constructed, or a portion thereof, did not belong to him prior to his marriage.   Mrs. Billington testifies that the funds with which payment was made were sums received by her husband for work done by him as a mechanic after his marriage.   There was no attempt made to contradict that statement, and legal presumption supports it.   Succession of Boyer, 33 An. 508.   There are several reported cases in our decisions where the court has felt itself justified iu inferring that improvements put up by a husband on his separate property, or paid for during marriage, and individual or sepa-

rate debts paid for during marriage, were paid through funds belong-
ing to his separate estate, but the facts of cases of that character
must be exceptional to authorize us to act on such an assumption.
An interval elapsed between Billington's marriage and the erection
of the house long enough to have enabled him to realize sufficient
money during the period to have met the payments called for, and
his means before marriage were not shown to have been so large as
to almost necessarily lead us to impute their unexplained disappear-
ance to outlays made for the building. It is possible that the whole
sum of eleven hundred and thirty dollars and ten cents, proceeds of
bridge, paid at different intervals between May 10, 1878, and Janu-
ary 10, 1880, may have arisen from a debt due to Billington before
his marriage, but no evidence was introduced to show the character
of the contract under which they were paid, nor the time it was
entered into. Of the amount stated seven hundred and eighteen
dollars were received by Billington himself after his marriage, and
the balance by his widow. The facts of the case should have
been shown.

Comparison of the facts of this case with those of Succession of
McLellan, 14 An. 763, and Succession of Boyer, 33 An. 509, will show
the clear distinction between them under the evidence found in the
record.

Buildings and improvements placed by the husband on his sepa-
rate property during marriage and paid for with community funds
do not become the property of the community—they belong to the
husband; but payments so made give rise to a charge in favor of
the community against his separate estate. This claim is neither
for the cost of the improvements nor is it for the value of the build-
ings. In the Succession of Ella Roth, 33 An. 541, affirming Mercier
vs. Canonge, 12 Rob. 385, we said that "it was well settled that the
recompense due to the community is the enhanced value result-
ing to the separate property from the estate at the date of the dis-
solution of the community, and that the result was reached by
making an average of the valuations placed by all the several wit-
nesses on the store and land and store together, and on the land or
store alone." See also on this subject, Mrs. Johanna Dillon vs.
Luke Dillon, 35 An. 93. The law governing the case is announced
in Art. 2408 of the Civil Code as follows:

" When the separate property of the husband or the wife has been

increased or improved during the marriage, the other spouse or his
or her heirs shall be entitled to the reward of one-half of the value
of the increase or amelioration, if it be proved that the value or
ameliorations be the result of the common labor expenses or
industry, but there shall be no reward due if it be found that the
increase is due only to the ordinary course of things, to the rise in
the value of property or the chances of trade."

We understand that portion of the judgment which decrees " that
an additional item of three hundred dollars be charged on said final
account against said minor," to fix three hundred dollars as being
the amount chargeable against the minor for and on account of the
increased value of the home property on account of the building
placed and appellee's acquiescence in the judgment to that effect,
but appellant having taken the ground that the building was separate
property, paid for out of separate funds, has not informed us whether,
assuming that her position be not accepted and that she be charge-
able with any portion of the price of the improvements, the amount
fixed by the court would be satisfactory to her or not; we therefore
fix the amount, as we understand it to have been fixed by the lower
court, at three hundred dollars.

Accountants are entitled to repayment for taxes paid on the
property belonging to the succession of Billington after Mrs. Bill-
ington's second marriage; but the evidence in the record on that
subject is not clear and at all satisfactory to us. The tax bills are
made out mostly in the name of Jackson, and the taxes upon the
different properties are so merged together and confused that we
are unable with precision to fix how much was due by the succes-
sion. Accountants should before making out their account have
separated the taxes so as to show beyond question what particular
portions of the taxes were due upon the property of the succession,
and by proper evidence show the correctness of the separation as
made. We can not be expected to make calculations and detail
work of that character. The items of taxes must be held not proved
and the judgment sustaining them reversed, and the matter is left
open for future examination and decision.

The legal charges and costs and attorney's fees incurred by
accountant in the matter of the succession of George Billington
should be divided between the minor and accountant equitably
according to the extent of the interests of the respective parties, as

announced in the Succession of Webre, 49 An. 1491, as the settlement of the husband's succession carries with it the settlement of the community in which accountant, Mrs. Jackson, is interested—any cost incurred for the special benefit of one or the other of the parties to be charged to that particular party. The costs and attorney's fees incurred in the matter of the succession of Rachel Billington should have been paid equally by Mrs. Hardie and the minor, Anna Billington. The judgment should be and it is hereby reopened on the subject of costs and attorney's fees in both, succession to be taken up and disposed of *de novo* in the District Court. The tutor is entitled to ten per cent. commissions on the amount of the revenues of the minors, not upon the amount of the property or of the property and the revenues. A comparison with the revenues, as shown by the account when homologated, will fix the amount of the commissions.

Under no circumstances could the expenses of the minor for board, clothing, tuition, etc., exceed her revenues (C. C. 350) so as to leave a "debt" hanging over the minor at the termination of the tutorship which, being enforceable, would, if she were not prepared to pay it, in all probability sacrifice her property and ruin her. The lawmaker contemplates that expenses of this character should either be met as they spring up by taking from the minor's revenues or from his capital by authorization of a family meeting under Art. 350, C.C., or that they be not permitted to spring up at all. The minor's "revenues" under this rule must be taken to be what remains each year, after the payment of taxes of that year.

Accountants have charged the minor with nine hundred and seventy-five dollars on this score. The evidence shows that all the parties are in very moderate circumstances—the step-father keeping a small country store, built by him upon a ten-acre tract of land belonging to the minor, and he and his wife (opponent's mother), their four children and opponent herself, all lived together in the residence built upon the place during the first marriage. Opponent is shown to have very seldom left her home, and it is fair to presume that her wants were small, as were the expenses incurred on her account. Living as an inmate of her own home with her mother, step-father and her half brothers and sisters younger than herself, she was very naturally called upon to perform, and the testimony shows that she did perform, services

Sims, Tutrix, vs. Billington.

of various kinds, such as a family so circumstanced would be likely to need from a member of the family. With that factor present it is exceedingly difficult to gauge the proper extent of any claim to be brought against her by her parents. The difficulty in the case is increased by there being a conflict in the testimony as to the extent and continuity of the services rendered by opponent. Several decisions have held that no charge whatever should be made against the child as between her parents and herself. It is intimated that a step-father, standing in lieu of a parent, should govern himself and be governed by the same rule. Succession of Boyer, 36 An. 511; Succession of Gros, 23 An. 106; Walker vs. Barrow, 43 An. 867; Succession of Sutton, 20 An. 151. One brother even who has boarded and given tuition to another brother is supposed to have done so from feelings of natural affection in the absence of special circumstances calculated going to show the contrary. 6 An. 100, Verret vs. Belanger. Accountants have made an " estimate " of what they consider proper to be charged to the minor, but have not given the data upon which that estimate is based. What have been the revenues of the minor? The only amount which had taken definite shape up to the time that the judgment of the District Court was rendered was the amount received by accountants from rent received from the property which fell to the minor in the partition of the Rachel Billington estate. The only other source of revenue is the rent of the " home place," the extent of which rent is one of the matters in litigation in this suit.

On the account (filed June 21, 1897) accountants charge themselves with four hundred and fifty-five dollars as rent for that property since 1883, or less than thirty-five dollars a year. The court substantially fixed it at about nina hundred and twenty dollars, or about seventy-five dollars a year, compensating all that amount for board, etc., except the sum of four hundred and sixty dollars. This would fix the expenses of the minor at about thirty dollars per year for the corresponding time. We think that a reasonable rate if that amount should be found to fall within the minor's revenues. We think, however, that the rent of the home property is fixed at too low a rate. It consisted of ten acres of land, upon part of which Jackson, after his marriage, constructed a store, which he has used ever since—a fair dwelling with four rooms and a hall down, and two rooms up stairs, a couple of stables and outbuildings. We think the rent of

62

property of that character in the country should certainly be worth at least one hundred and fifty dollars a year.

Opponent complains that accountants should have been permitted to have been brought into their account and have considered by the court any matters connected with the succession of Rachel Billington in which she acquired an interest during the tutorship as heir of her grandmother.

The minor being under tutorship when that succession opened the tutors of the minors finding a will of the deceased in existencé detrimental to opponent's interests came to an amicable settlement with her aunt (her grandmother's legatee) by which the latter renounced all advantages under the will and consented to take the succession with the minor, share and share alike, and to have the same partitioned. Opponents brought suit for that purpose and the property of the succession was divided in kind. The tutor as such took possession for the minor of the property so allotted to her and were bound to account to her for it at the termination of the tutorship. They placed the same on their account and undertook to account for their administration of it while tutors charging themselves with certain revenues and crediting themselves with various amounts. Whether accounts in respect to these matters be correct or not is a different matter from their right to present their gestion as to this particular property as a part of their general account as tutors. We think they had the right to so present them subject to contest.

Opponent complains that the tutors should have paid any portion of the debts left by Rachel Billington. We see no ground for complaint if the debts were due and the tutors paid for the minor no more than what was really her share of the debts. Art. 1371, C. C., declares that in a partition no partition is made of the passive debts of the succession—that each heir remains bound for the share he takes in the succession.

The debts of the succession of Rachel Billington were small in respect to the value of the property received by the heirs.

Opponent claims that the tutors paid a larger proportion of those debts than the minor was liable for; that they paid in entirety some debts instead of paying the minor's virile share. There seems to be some ground for that complaint. Some of the taxes paid seem to have covered property other than that received by the minor, and the mortgage note paid by the tutors seems to have been paid in full

instead of by contribution. As this case will have to go back we think it best to reopen the matters connected with the settlement of the Rachel Billington succession, and leave them open for future examination and decision.

Opponent complains that accountants should have been permitted to establish by testimony the amount that Mrs. Billington had during her widowhood paid out for debts of the community, and for the support of opponent and herself out of the five hundred and twenty-three dollars which appeared on the first inventory, as they did not place the amounts so expended on the account, so as to notify her of proposed proof on the subject. She insists, however, that this amount of five hundred and twenty-three dollars was correctly admitted in the first inventory to belong to the separate estate of her father. The amount in question seems to have been received by Mrs. Billington after her widowhood from Mr. Hardie as part of the "net proceeds of the bridge." They are that part of the proceeds of the bridge which were turned over after Billington's death to his widow, the other part having been received by himself during his lifetime.

The fund was that which we have already referred to as having to be taken as a community fund in the absence of evidence to the contrary. We must so consider the part which was turned over to Mrs. Billington. We think the amount was erroneously placed on the first inventory to the credit of the husband's separate estate. We think that the matter of the expenditure of this amount should be reopened and left open for future examination and adjustment. Opponent was not notified that it should be the subject matter of litigation.

The court erred in decreeing that the store building erected upon the "home place" by W. H. Jackson, should be taken by opponent in place of "rent." The ownership of the building was in Jackson— he could not be made to lose or opponent be made to acquire the ownership of the same without their respective consent. If "rent" should be found to be due by accountants it will have to be paid by them, unless compensated in some legal way.

We think the charge made for repayment of insurance premiums paid on the residence building on the home place a proper one.

Accountants should be charged for all movables converted by them with legal interest from date of conversion.

We think the best method of disposing of this case is to reverse

the judgment of the District Court and to remand the cause to the District Court with instructions to Ella Sims, wife of W. H. Jackson, and W. H. Jackson to file a full and final account of their admin-. istration as tutrix and co-tutor of Anna Billingtou, wife of Charles L. Younger, in conformity with the views herein expressed, and it is hereby so ordered, adjudged and decreed. Costs of appeal to be paid by appellees.

### ON APPLICATION FOR A REHEARING.

BREAUX, J. Plaintiffs and appellees in their application for a rehearing set forth that this court erred in allowing in favor of the minor, *against* the tutor, two thousand two hundred and fifty dollars as rent of the "home place" in succession of George Billington, being one hundred and fifty dollars per annum for the number of years stated.

And in allowing *against* the minor only four hundred and fifty dollars for support and care for the same period as just stated.

. As to the former, the two thousand two hundred and fifty dollars, we yield assent to plaintiff's representation to this extent only. We rescind that part of our decree heretofore rendered allowing the amount of two thousand two hundred and fifty dollars, as just stated.

Having rescinded that part of our judgment, we leave the question open for future adjustment. All rights of the parties as to that amount are reserved. Evidence of plaintiff and evidence for defendant may be heard as relates to the amount which should be allowed as rental for the place identified as " home place,"' occupied as shown by the evidence. After the evidence will have been heard the matter will be fixed by judgment, and the plaintiffs and appellees will be charged up with this rental: the sum which may be found due. We desire to have it well understood upon this point. that it is left to future adjudication, and that it is the only point in regard to which we make a change on this application for a rehearing.

The next ground of objection, numbered two in the application for a rehearing, is, that an error was committed in our decision in decreeing that the engine and boiler valued at three hundred dollars is the separate property of the minor.

We have given further consideration to the facts bearing upon this point.

We are firmly convinced that as to this item our decision is absolutely correct.

It must, in consequence, in this respect remain unchanged.

The next ground of appellant for a rehearing is numbered 3 (three) and sets forth that our holding that the tutor had paid more than the minor's share of the debts of the seccession of Rachel Billington was error.

This was only left open for future hearing and determination, so that complainant has on that score no cause to find fault, as the question is left open and is not affected adversely by our decree.

The next ground of the application, numbered (4) four, asserts that there was error on our part in our having decided that the tutor had not shown sufficiently exact amount of taxes paid for the minor.

We thought and still think that an account should be made out of these taxes, showing amount of taxes paid for the minor.

And that it should have the support of sufficient evidence to render it entirely certain that the taxes charged were paid for the minor.

5. Our reopening the question and permitting evidence as to item of five hundred and twenty-two dollars and fifty cents is complained of by appellee.

It is asserted that the widow expended this sum for debts and support of herself and minor prior to her second marriage.

We remanded the case as relates to the question here on the ground that further evidence should be introduced in support of the claim. We do not think that as to this item we should rescind our judgment.

A minor is concerned. We think further evidence can well be offered in support of this claim.

*Lastly:* As relates to the costs of appeal a question also raised.

Where a judgment is reversed as in this case they are due by appellee. Nothing takes the case of the ordinary rule.

After having rescinded our decree, only as relates to the item two thousand two hundred and fifty dollars rental as above set forth, we refused the application for a rehearing. The amendment we have made could, in our view, be made on the application for a rehearing and without granting a rehearing.