(72 South. 713)

No. 21264.

In re TUTORSHIP OF RATCLIFFE MINORS.

Opposition of INTERSTATE TRUST & BANKING CO.

(Jan. 24, 1916. On the Merits, March 20, 1916. On Application for Rehearing, Oct. 16, 1916.)

*(Syllabus by the Court.)*

1. GUARDIAN AND WARD ⟳151—TUTORSHIP —COMPENSATION OF TUTOR—"REVENUE."

The term "revenue," as used in article 349 of the Civil Code, allowing a tutor a commission of 10 per cent. on the annual revenue of the property committed to his charge, means the income produced without impairment of the capital.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 501; Dec. Dig. ⟳151.

For other definitions, see Words and Phrases, First and Second Series, Revenue.]

2. GUARDIAN AND WARD ⟳151—TUTORSHIP —COMPENSATION OF TUTOR—COMMISSIONS.

The tutor is not allowed to treat as revenue, and charge a commission on, the dividends paid from profits that were earned before the minor inherited the stock.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 501; Dec. Dig. ⟳151.]

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; W. T. Cunningham, Judge.

In the matter of the tutorship of the minors of George M. Ratcliffe. Opposition to the final account of the Interstate Trust & Banking Company. From the judgment, the

accountant appeals. Reversed and remanded, with directions.

Thomas E. Furlow, of New Orleans, for appellant. Robert H. Marr, of New Orleans, for appellee.

### On Motion to Dismiss.

SOMMERVILLE, J. The motion is on the ground that the transcript is defective, in that certain portions of the pleadings and evidence which are necessary to a proper trial of the case on appeal are missing. Since the motion was filed the appellant has, under the law, filed a supplemental transcript, which appears to contain the missing documents.

The motion is denied.

### Statement of the Case—On the Merits.

O'NIELL, J. The Interstate Trust & Banking Company has appealed from a judgment rejecting its final account as tutor, and ordering it to file another account in conformity with the instructions of the district judge.

The account was opposed by a sister of the minors, Miss Annie Daisy Ratcliffe, who was appointed their guardian in Colorado, and whose appointment was recognized by the court of their former domicile in this state. Her complaint was that the charge for the commission of 10 per cent. on the alleged revenues of the minors should be reduced from $2,952.84 to $569.96, because the difference was computed on receipts that were not in reality revenues. The guardian also opposed a charge of $25 for traveling expenses of the bank's attorney, on the ground that his going to Natchitoches to have the account approved was not in the interest of the minors.

The amount representing the revenues on which the tutor charged a commission of 10 per cent., on the final account in contest, includes dividends on certain shares of stock owned by the minors in a corporation called the Phœnix Land & Immigration Company. The district court held that these dividends were not revenues of the property of the minors, because they represented the proceeds of the sale of the property of the corporation in which the minors owned the capital stock. In the judgment appealed from the amount of revenues on which the bank had computed its commission as tutor was reduced from $29,529.48 to $2,843.19; and the bank was therefore directed to take credit for a commission of $284.32, instead of $2,952.95, one-half for itself as tutor of the property, and one-half for the tutor of the person of the minors, on the account to be rendered. The judgment of the district court rejects all items with which the bank is credited on the account as disbursements, as being principally expenditures of the capital, not authorized by a family meeting. The bank was directed to take credit for disbursements not exceeding the revenues of the estate and for any expenditures of the capital that were authorized by a family meeting; and the bank was also directed to charge itself interest at 5 per cent. per annum on whatever balance might be found due the minors from the date of the judgment.

In answer to the bank's appeal, Miss Annie Daisy Ratcliffe, guardian of the minors, asks that the judgment be amended by directing the bank to charge itself interest from the day it received each sum of money belonging to the minors, and on the surplus of $500 of the revenues of the estate from the day it reached that sum, and that the judgment be further amended by ordering the bank to render a separate account as tutor to each of the four minor children.

Among the items of property inherited by these minor children from their father were certain shares of stock of the Phœnix Land & Immigration Company, a corporation organized for the purpose of dealing in real estate. The principal asset of the corporation

at the time of the death of the father of these children was the Allen plantation, which the company continued to operate for about two years; that is, until it was sold. The corporation has not bought nor sold any other property since the death of the father of these children, and it has ever since been, and is yet, the intention of the stockholders of the corporation to liquidate its affairs by selling all of its property and distributing the proceeds among the stockholders in proportion to their holdings.

On the 1st of April, 1911—that is, about two years after the death of the father of these children—the Phœnix Land & Immigration Company had on hand $5,549.65 from the operation of the Allen plantation. On the 5th of that month the company received as the cash portion of the price for which it sold the Allen plantation, $16,302.25, and on the 19th of that month received $4,422.02 for seed and other products of the plantation, making a total fund of $26,273.92, of which $26,000 was distributed among the holders of the 200 shares of stock as a dividend of $130 per share.

On the tutor's account covering the period from the 11th of October, 1910, to the 15th of May, 1911, appear certain items aggregating $14,278.27, being the net proceeds of the dividend of $130 per share resulting from the sale of the Allen plantation and paid on the 110 shares of stock belonging to the five minor children. These items were treated as revenues, and were included in the amount on which the 10 per cent. commission was charged by the bank.

The purchaser of the Allen plantation gave two notes of $12,636.16 each, representing a part of the purchase price; and when they matured and were collected, in 1912 and 1913, respectively, the proceeds were distributed among the stockholders as dividends, the first being $75 per share, and the second $65 per share.

In the meantime one of the five minor children, who had arrived at the age of majority or was emancipated, was settled with by the bank, and received his 22 shares of stock of the Phœnix Land & Immigration Company. The dividend of $75 per share on the 88 shares belonging to the four minors in 1912 amounted (less $12.25 exchange on the remittance) to $6,587.75, and appears on the tutor's account as an item of revenue, on which the 10 per cent. commission was calculated. The dividend of $65 per share paid in 1913 (less $10.75 exchange on the remittance), amounting to $5,709.25, was also included in the revenues as a part of the basis of the 10 per cent. commission.

The remaining property of the Phœnix Land & Immigration Company after the sale of the Allen plantation was estimated by the board of directors to be worth as much as, or more than, the amount of the outstanding capital stock of the corporation, although the members of the board, excepting Miss Annie Daisy Ratcliffe, were willing to sell all of the assets of the corporation for an amount $1,400 less than the par value of the capital stock, deeming such a sale better policy than waiting for sales at prices that would bring full value for the numerous small tracts of land forming the remaining assets of the corporation.

### Opinion.

[1, 2] From the facts recited above it is evident that, although the three distributive dividends of $130, $75, and $65 per share were the earnings of the corporation, they were earned or produced before the minor children inherited the capital stock that produced these profits. These three dividends therefore, amounting to $270 per share of stock, were not the revenues of the estate of the minors. They were revenues produced by the property of the father of the minors, and transmitted to the children as undivid-

ed profits already earned, not reduced to possession, but contributing to the value of the capital stock inherited by the children.

When the dividend of $130 per share was paid to the minor children, their capital stock in the Phœnix Land & Immigration Company was immediately reduced in value $130 per share. And so was it reduced in value exactly the amount of the other two dividends paid to the minors. The property belonging to the minor children did not thereby produce or earn revenues any more than if all of the assets of the Phœnix Land & Immigration Company had been sold and the proceeds paid out in dividends. Revenue or income is what is produced by capital without impairing the capital. What is taken from the capital cannot be considered revenue or income. See Sargent Land Co. v. Von Baumbach (D. C.) 207 Fed. 430, affirmed in Von Baumbach v. Sargent Land Co., 219 Fed. 31, 134 C. C. A. 649, and in Mitchell Bros. v. Doyle (D. C.) 225 Fed. 437.

The decision by the Supreme Court of Illinois in De Koven v. Alsop, 205 Ill. 309, 68 N. E. 930, 63 L. R. A. 587, is not authority for declaring that the dividends paid on the stock of the Phœnix Land & Immigration Company in this case were revenues of the property belonging to the Ratcliffe children. In the case cited the question was whether certain dividends that had been earned mainly during the lifetime of the testator, and paid on the capital stock forming part of his estate after his death, were to be considered a part of the "net income" of his estate or a part of the capital or corpus of the estate. The testator had given the residue of his estate (including the capital stock on which the dividends in question were paid after his death) to trustees to hold, invest, rent, manage, and care for the same, and to pay the net income thereof to his widow during her lifetime, so long as she should remain unmarried, and at her death or in the event of her remarrying the residue was to be paid to certain remaindermen named in the will. The court reasoned that, inasmuch as the dividends would have been regarded as the income from the testator's stock investment if they had been paid by the corporation during his lifetime, they became nothing else when received by the trustees of his estate after his death. The court did not distinguish between the income or revenue earned by the property of the testator before his death and the income or revenue earned after his death. It seems to have been conceded that no such distinction was necessary in determining what disposition should be made of the dividends under the terms of the will.

The distinction must be made, however, between revenues earned by the property belonging to the Ratcliffe minors and revenues earned by the property of their father and transmitted to them, in order to determine whether their tutor has a right to tax those so-called revenues with the commission of 10 per cent.

The exact language of article 349 of the Civil Code is that the tutor may retain, as a commission for his care and labor, 10 per cent. on the annual amount of the revenues of the property committed to his charge. The annual amount of the revenues of the property committed to the tutor's charge cannot mean the revenues that were produced and contributed to the value of the estate before it was committed to his charge. In the Tutorship of the Hollingsworth Heirs, 45 La. Ann. 145, 12 South. 12, construing article 349 of the Civil Code, it was held that the term "revenues" meant the earnings resulting from and during the tutor's administration, and that it did not include the rents that were earned before the property was inherited, though collected by the tutor during his administration. See, also, Sims, Tutrix, v. Billington, 50 La. Ann. 968, 24 South. 637.

Our conclusion is that the judgment appealed from is correct in so far as it rejects the commission of 10 per cent. charged on the dividends collected by the tutor on the capital stock in the Phœnix Land & Immigration Company. But we see no good reason for causing further delay and expense by rejecting the tutor's account entirely and ordering the filing of another account, instead of amending the account that was filed and approving it as amended.

The commission of $1,428.26 charged on the 20th of April, 1911, is largely based upon the dividend received from the Phœnix Land & Immigration Company. One-fifth of the overcharge has been borne by the child who was emancipated; and the remaining four-fifths, amounting to an overcharge of $1,135.65, must be eliminated.

From the commissions charged on the account rendered on the 10th of April, 1912, amounting to $717.66, must be deducted $65.77 charged on the dividend from the Phœnix Land & Immigration Company and $1.30 charged on the accrued interest paid on what are called Tremont bonds, and $13.78 charged on the accrued interest paid on city certificates. This accrued interest was paid by the minors as a part of the price of the bonds and certificates, and could not be considered revenue when it came back at the end of the semiannual interest period. The commissions charged on the account rendered on the 10th of April, 1912, therefore must be reduced $673.85.

Commissions amounting to $644.23 were charged on the account rendered on the 10th of March, 1913. $570.92 charged on the dividend received on the Phœnix Company stock must be deducted, and, for the reason stated above, regarding the Tremont bonds, there must be deducted also 62 cents charged on the accrued interest paid on town of Providence bonds and $3.75 charged on the accrued interest paid on Lake Providence bonds, making a total reduction of $575.29 in the commissions charged on the account rendered on the 10th of March, 1913.

Counsel for the opponent claims that there is an overcharge of $9.02 in the commissions amounting to $162.79 on the final account covering the period from the 10th of March, 1913, to the 1st of October, 1914; but it does not appear that a commission is charged on that account, and we have no assurance that the tutor will claim a commission on interest paid by and returned to the minors in the stock and bond deals.

It is also contended in the brief of the counsel for the opponent that the tutor sold bonds to the minor wards, and that they sustained a loss of $3.92 on one transaction, 23 cents on another, and $7.20 on another. There is no evidence that the bank ever owned the bonds referred to, nor does the record disclose that these losses were sustained by the minors.

There was no complaint in the opposition filed by the guardian that the expenditures made by the tutor exceeded the revenues of the estate; and that does not appear from the record. A family meeting was held, authorizing the tutor to make expenditures exceeding the revenues to a limited extent, and it does not appear that the tutor exceeded that authority. Besides, the transactions referred to in the judgment of the district court resulted to the advantage of the minors, and no good purpose could be accomplished by declaring that they were invalid.

The complaint made for the first time in the opponent's answer to the appeal that the tutor neglected to keep the excess of the revenues invested, and should therefore be charged interest from the date each sum was received, is not borne out by the record. The tutor is only required to invest the revenues when they amount to as much as $500; and that appears to have been done with reason-

able promptness. See Fulton v. Curtis, 3 La. 194; Glenn v. Elam, 3 La. Ann. 616.

As to the complaint made for the first time in the opponent's answer to the appeal that the tutor should render a separate account to each of the four minor children, it is sufficient to say that the account rendered, with the vouchers approved by the opponent, shows to whose account each item is to be charged, except, perhaps, as to certain small sums for incidentals paid with board bills. There is no serious cause for complaint in that respect.

No argument has been made, and we see no good reason, for rejecting the charge of $25 for traveling expenses of the attorney's trip to Natchitoches on business for the minors.

For the reasons assigned, the judgment appealed from is annulled and set aside; and it is now ordered, adjudged, and decreed that the final account rendered by the Interstate Trust & Banking Company as tutor of the Ratcliffe minors be, and it is hereby amended by reducing the commission charged on the 20th of April, 1911, from $1,428.26 to $293.61, by reducing the commission charged on the account rendered on the 10th of April, 1912, from $717.66 to $45.81, and by reducing the commission charged on the account rendered on the 10th of March, 1913, from $644.23 to $68.94; and, as thus amended, the said final account is approved, at the cost of the estate of the minors.

## On Application for Rehearing.

PER CURIAM. Said final account was based in part on prior annual accounts duly homologated, and was supported by the affidavit of the president of the Trust & Banking Company, former tutor ad bona.

The opposition thereto filed by the tutrix of the minors was restricted to the items of commissions, and the item of $25 for alleged legal expenses.

The evidence adduced on the trial of the opposition was limited to the subject-matter of the late tutor's commissions.

In his opinion the trial judge considered other objections not raised by the pleadings or the evidence, and ordered the late tutor to file another account, showing the sums authorized by the court to be disbursed beyond the annual revenues of the minors, and making certain charges of interest on the amounts collected.

These and other objections dehors the opposition have been urged in the Supreme Court, and we are of opinion that such objections should not have been considered by the court below, or by this court.

The law is positive that heirs or other claimants shall file their written objections, if they have any, signed by themselves or their counsel, "to each item of the account to which they object, or of which they pray for the rejection." C. P. art. 1004; Succession of Bofenschen, 29 La. Ann. 711.

Rehearing refused.