Tutorship of SCOTT.*

No. 4335.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1932.

Joseph H. Levy, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

McGREGOR, J.

In this case the defendant, the City Savings Bank & Trust Company, is the testamentary tutor of the minor, Mary Rose Scott, and Levi Cooper is the undertutor. The tutor filed its second annual account on February 29, 1932, which covered the period from August 5, 1930, to December 31, 1931, inclusive. The first annual account was filed on August 5, 1930, and covered the period of one year prior to that date. Both accounts provided for 10 per cent. commission for the tutor, based on the gross total revenues of the minor. These revenues were derived from two sources, viz. (1) Rents from real estate; and (2) dividends from investments in securities.

The first account was approved by the undertutor, and an order was signed by the district court ordering it filed, approved, and homologated. When the second account was filed, the undertutor refused to approve it, and it was ordered to be served on him with a regular citation. Soon after he was cited and served with a copy of the account, the undertutor filed an opposition to its approval and homologation. This opposition was based on the contention that in the computation of the tutor's commission all sums spent for taxes, repairs, insurance premiums, and such like should be deducted from the gross receipts or revenues, and that this balance or remainder should constitute the basis for the calculation of the said commission.

At the trial there was an agreed statement of facts signed by the attorneys of the parties, and the case was submitted to the court for decision thereon. The opposition was dismissed, and the account was approved and homologated. The undertutor, or opponent, has appealed.

Opinion.

The agreed statement of facts signed by the parties is as follows:

"That the minor Mary Rose Scott is the owner of a double Apartment House known as 419 and 421 Egan Street in the City of Shreveport, Louisiana; that during the years 1930–31, at the instance of the tenants who occupied the said apartments, that repairs were made to the roof, waterworks, garage and part of the interior of the said Apartment was papered and painted; that the tenants deducted $1.50 per month during said entire period for the cutting of the grass; that there were taxes and insurance on the said property that had to be paid during said period.

"That the entire amount paid by the Tutor for the said repairs, taxes and insurance, etc., during said period was $1114.26; that

*Rehearing denied July 14, 1932.

the total Gross Revenues of the said minor for the said period amount to $4220.25; that the total Net Revenues of the said minor for the said period amount to $3105.59; that the tutor has charged the minor the sum of $422.-02 as its commission for the said period; that the under tutor contends that the law does not permit the tutor to charge more than the sum of $310.58, and that the difference between the amount charged by the tutor and the amount contended to be correct by the under tutor is $111.58."

There is only one question at issue in this case, and that is as to whether the tutor's 10 per cent. commission should be allowed only on the remainder left after deducting expenses such as taxes, insurance, repairs, etc., from the total amount collected as revenues from the real estate of the ward.

The law governing the case is article 349 of the Revised Civil Code, which reads as follows: "The tutor may retain as a commission for his care and labor ten per cent. on the annual amount of the revenues of the property committed to his charge."

In order to decide this case, the meaning of the word "revenues" in this article of the Code must be determined. This word is used in several articles of the Code with varying meanings.

Article 347 provides that: "The tutor shall be bound to invest, in the name of the minor, the revenues which exceed the expenses of his ward, whenever they amount to five hundred dollars. In default thereof, he shall be bound to pay on such excess the rate of interest allowed by law."

In the case of Carter v. Ætna Casualty Company, 165 La. 478, 115 So. 662, it was held that in this article the word "revenues" is synonymous with the word "funds."

Article 350 of the Civil Code provides that the expenses of the minor should never exceed the "revenues." In the case of Sims v. Billington, 50 La. Ann. 968, 24 So. 637, 640, it was held: "The minor's 'revenues,' under this rule, must be taken to be what remains each year after the payment of taxes of that year." The fact that taxes are referred to in this manner is not significant, nor is it decisive of the issue involved. Board, lodging, or school tuition might just as well have been used.

In the case of the Succession of Hargrove, 9 La. Ann. 505, the article involved in the case under consideration was discussed, but it is of very little assistance to us, for the reason that the cases are not alike. The question in that case was as to whether the tutor's commission should be calculated upon the gross amount of the proceeds of the sales of the crops made on a plantation belonging to the tutor's ward. In each case of this kind that is presented, resort must be had to common sense. It should not require a very high degree of intelligence to understand that the revenues of a farm are what is left after there is deducted from the sale price of the crops the expenses of making the crops. Building fences, repairing houses, paying taxes and insurance premiums constitute no part of this expense. In deciding this point, the court said: "The question which arises under this article, apparently plain in its meaning is by no means free from difficulty. If it be conceded that the gross amount of the proceeds of the sales of the crops constituted the revenues, then it would be perfectly clear, under this article of the Code, that the commission was properly charged by the tutor. But is it so? The Judge a quo, in support of his views that the commission should be limited to the net proceeds, adverts to the Code of 1808, and the Statutes of 1809 and 1811, in connection with this article. The Code of 1808, required the property of minors to be sold, and the proceeds to be placed at interest. This was modified by the Statute of 1809, by allowing the father or mother, acting as the tutor or tutrix of the minor, to retain the property in kind. Under the 6th section of that Act, the tutor was entitled to claim a commission of ten per cent. on the annual revenues for his administration on the minor's estate, previously deducting therefrom all expense, etc. By the Act of 1811, the tutor's commission was limited to the net proceeds of the minor's estate. Be this as it may, we consider these provisions to be abrogated, as the case under consideration has been specially provided for in the Code of 1825, to which alone we must look for the law. Upon mature consideration, however, we are of opinion that the Judge a quo did not err in his conclusion, that the net proceeds of the sales of the crops must be considered as the revenues meant under the provisions of that article."

In discussing the above case, counsel for the undertutor and appellant calls attention to the fact that the court does not go into details as to how the net proceeds of the sales of the crops was arrived at, but he urges that this court is bound to presume, first, that various repairs were made on the plantation; second, that taxes and insurance had to be paid; third, that feed for the work stock had to be provided; and, fourth, that the net proceeds of the sales was arrived at by deducting all these items from the gross proceeds. Counsel should have gone further and said that the wages of the laborers and the cost of feed and possibly many other items should have been deducted. But we cannot presume what was on that particular account. The payment of taxes and insurance did not assist in the making of the crops, and, applying the rule of common sense, we do not think those amounts should be taken into consideration in arriving at the revenues of the plantation for the purpose of the computation of the tutor's commission.

In his brief, counsel for the undertutor, in commenting further on the Hargrove Case, says: "Hence, we say that we cannot differentiate between the deductions there allowed for the maintenance of the plantation that produces crops, and the deductions in the instant case for repairs, taxes and insurance on an apartment house that produces rentals." Counsel does not reason correctly. He assumes as a premise a thing that has not been proved. There is nothing in the case cited to show what deductions were allowed for the expense incurred in the maintenance of the Hargrove plantation.

The duties of a tutor include the disbursement of funds and the attending to the ward's business in general as well as the receiving of funds. It would seem reasonable, therefore, to say that the tutor pays the taxes, the insurance premiums, repair bills, and such like out of the same fund out of which he pays the expenses for his living and education.

Counsel cites some extreme cases, and shows how a hardship would be worked upon the minor and his property. Cases of this kind do not govern in the determination of fundamental principles. It is true that the law is very solicitous in all matters affecting the interests of minors, but it must not be forgotten that the tutor has his rights also. Under the theory of the undertutor, the tutor would be entitled to no commission if, through a combination of circumstances, needed repairs should consume all the revenues of a minor. The tutor would be required in that case to devote his time and attention, but would be denied any compensation. The law does not sanction such a course.

As we see it, taxes, insurance, repairs, etc., are fixed charges that have to be met out of the revenues of a minor, just as are his personal expenses. It is no more fair to exclude one from the computation of a tutor's compensation that it would be to exclude all. If the revenues are insufficient to meet all the demands of a minor, the tutor may, in the manner provided by law, use some of the capital, but his commission would be confined to the revenues.

In the case of the Tutorship of the Minor Heirs of Hollingsworth, 45 La. Ann. 134, 12 So. 12, 16, the matter of the tutor's commission on revenues is discussed. In the course of that decision it was held that: "Revenue is an amount accruing to the minor through the care and labor of the tutor. In order that he may recover that commission, it must be derived from crops, rent, interest." The point involved was that the tutor was claiming a commission on receipts that were inherited by the minor and that did not arise through the efforts of the tutor.

The commissions of a tutor are somewhat analogous to those allowed to executors and administrators of estates. In the latter case the commissions are computed upon the basis of the total funds out of which all bills are paid which, of course, is the entire inventory. In the case of a tutor, commission is computed upon the basis of the entire fund out of which he pays all bills for the minor, and that entire fund constitutes his revenues. In this computation, why require him to pay said bills and deduct them from the fund out of which he pays them in order to secure a basis for the computation of his commission? This course appears unfair to us and contrary to common sense.

For the reasons assigned, the judgment appealed from is affirmed with all costs.

PALMER, J., recused, and takes no part in this decision.