## No. 5338.

### J. M. SERRA É HIJO VS. HOFFMAN & CO.

Under the bankrupt act the assignee of any bankrupt is authorized to become a party to any suit pending in a State court either for or against the bankrupt, but he can not be compelled to become a party to such suit by any order of court.

A party sued in a State court who has been adjudicated a bankrupt may ask for and obtain a stay of proceedings until his application for a discharge has been passed on. If he has obtained a final discharge he may plead it in bar of all claims from which such a discharge liberates him. If, however, he fails to plead his adjudica- tion or discharge in the lower court, that court will adjudicate the case without regard to such facts.

That clause in the bankrupt act which provides that a creditor who has sued a bank- rupt before his bankruptcy in a State court can only go on with his suit (if the defendant pleads his adjudication or discharge) by permission of the bankrupt court, only applies to courts of original jurisdiction, in which pleas in bar may be filed. It does not apply to this court, whose jurisdiction of a case is not in any- wise affected by that clause.

The assignee of a bankrupt can not intervene in a suit in which the bankrupt is sued, and set up either the latter's adjudication or discharge in bankruptcy as a ground for staying proceedings, or in bar of the action. That is a right personal to the bankrupt.

A plea of adjudication or discharge in bankruptcy can not be originally set up in this court. Such plea must be expressly made in the court below; else this court will refuse to take cognizance of them.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom*, J. Trial by jury. *George L. Bright*, for plaintiffs and appellees. *Hud- son & Fearn*, for defendants.

The opinion of the court was delivered by MARR, J.

On the twentieth of June, 1874, Hoffman & Co., defendants in the court

2

below, took a suspensive appeal from a final judgment rendered against them. The appeal was returnable on the first Monday of November, and the transcript was filed in this court on the fourth of September, 1874.

On the twenty-ninth of March, 1876, pending this appeal, counsel for appellees, suggesting that appellants had been adjudged bankrupts since the appeal was taken, and that W. E. Bertus had been appointed assignee, moved the court to order that the assignee be made a party, and that he be notified, and a copy of the motion and order was served on him.

On the twenty-ninth of December, 1876, the appellants filed in this court a plea setting out their final discharge in bankruptcy, which appears to have been granted on the ninth of March, 1876, and to re-date back to the fourteenth of October, 1874, as the date of the filing of their petition. The plea concludes with a prayer for leave to file it together with the certificate of discharge.

The assignee took no notice whatever of the order of the court that he be made a party, and, as his counsel, who were also the counsel for appellants in the court below and in this court, inform us in their printed brief, he "has made no appearance in this court except by counsel on the hearing of the appeal, and he now asks that all further proceedings in this court be perpetually stayed."

We do not find anything in the bankrupt act which requires the assignee, or which authorizes any court to compel him, to become a party to a suit brought by or against the bankrupt. It is true that all the estate, real and personal, of the bankrupt is conveyed to the assignee, and the legal title vests in him. It is his duty to obtain possession of all the property and effects of the bankrupt not exempt by law, and to resort to such proceedings as may be requisite for that purpose; and this he is authorized to do by the express terms of the act as well as in virtue of the title conveyed to him as assignee. The assignee, however, must use his own discretion with respect to suits pending in which the bankrupt is a party. The language of section fourteen of the bankrupt act (section 5047 of the Revised Statutes) is that he *may* prosecute and defend such suits in the same manner and with like effect as they might have been prosecuted or defended by the bankrupt.

And so it is provided by section sixteen, Revised Statutes, section 5047, that "if at the time of the commencement of proceedings in bankruptcy an action is pending in the name of the debtor (the bankrupt) for the recovery of a debt or other thing which might or ought to pass to the assignee by the assignment, the assignee shall, *if he requires it*, be admitted to prosecute the action in his own name, in a like manner and in the like effect as if it had been originally commenced by him."

It is no part of the business of the assignee to protect the bankrupt,

and it would not be proper for him to tax the estate with the costs and expense of a litigation from which no benefit could result to the estate.

If a suit is pending against a bankrupt for the recovery of property, or in which some right or lien is claimed upon property which ought to pass to the assignee by the assignment, it would be his duty to intervene, if it should become necessary for him to do so in order to protect that property, as it would be his duty to intervene and prosecute a suit if it should become necessary for him to do so in order to recover any property or right of the bankrupt which ought to enter into and form part of the estate in bankruptcy.

But where the assignee is satisfied that nothing is to be gained for the estate by defending or prosecuting such suit, his duty requires him to take no part in the litigation; and to leave it to be disposed of between the parties, without interference by him.

What the law thus *permits* and *enables* the assignee to do, in the exercise of a sound discretion, it nowhere *commands* him to do, and if he does not choose to become a party voluntarily to a suit pending in the name of the bankrupt, we do not think that any court in which such suit may be pending, has the power or authority to make him a party or to compel him to submit to its jurisdiction and control.

The order of this court that the assignee be made a party did not, we think, have that effect. The service of a copy of that order gave him notice of the proceeding, however, and afforded him an opportunity to exercise his discretion and choice either to become a party, or to refrain from doing so, as he might determine the interest of the estate required.

There is a wide difference between the effect of the death, and the effect of the bankruptcy of a party to a suit. Death puts an end to all judicial proceedings in the name of the deceased; and no steps can be taken until his proper legal representative is made a party in his stead. Bankruptcy vests in the assignee the right to prosecute the suits in which the bankrupt is the actor, where the thing sued for might or ought to pass to the assignee by the assignment, and the defendant in such suit may protect himself against further prosecution by the bankrupt, by proper pleading and proof of the adjudication and assignment. But this is not because the bankrupt is *civiliter mortuus*. Nothing in the law gives any such effect to the bankruptcy. It is simply because the property, rights, and credits of the bankrupt have passed from him and are vested in the assignee; and the bankrupt has no right to recover that which does not belong to him, just as the case would be with any other person whose right and title in and to the thing sued for have been divested *pendente lite*.

Where the bankrupt is defendant in the suit, his capacity to stand in

judgment is in no manner impaired. The adjudication arms him with the means of protection, and gives him the right to demand that the proceeding against him be stayed, and that he be allowed a reasonable time to obtain his discharge. When he obtains the discharge he may plead and exhibit it as a full and complete bar to the suit, so that no judgment can be rendered against him if the debt be not one of those excepted by law from its operation.

Suppose, however, the defendant does not choose to demand a stay of proceedings; or, having obtained a discharge, that he neglects to plead it; certainly the court in which the suit is pending will not take cognizance of the proceedings in bankruptcy not brought to its notice by proper pleading, nor undertake to give the defendant the benefit of a stay or of a bar which he does not choose to avail himself of. A court having once acquired jurisdiction of the parties and of the cause, must proceed to determine the issues between them in the regular performance of its judicial duty, and an adjudication or a discharge in bankruptcy not pleaded, can have no more effect on the judicial action of the court than a payment, or release, or any other bar not brought within the judicial cognizance of the court by the defendant.

The counsel for appellants seem to think that a court in which a suit is pending against a bankrupt must have leave of the court in bankruptcy in order to proceed in the cause, and they cite a portion of section twenty-one of the bankrupt act, (Revised Statutes, section 5106,) which is as follows: " If the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy; but execution shall be stayed."

It is obvious from the mere reading of this section that it is applicable to courts of original jurisdiction alone; to courts in which pleas in bar can be received and passed upon; to courts which enforce their judgments by execution; and the counsel err in applying it to an appellate tribunal which reviews the judgments of inferior courts only upon the certified transcript of the record and proceedings in such courts, which has no power to receive and pass upon pleas and defenses not set up in the inferior court, and which does not attempt to enforce its decrees by execution.

The State courts do not exercise their powers by leave of the bankrupt court. They depend for their authority and jurisdiction on the organic and statute laws of the State. Where a suit is pending in a State court, and the defendant, having been adjudicated a bankrupt, demands a stay of proceedings to enable him to obtain and plead his discharge, the plaintiff may apply to the bankrupt court for leave to prosecute his suit to judgment in order to fix the amount due him which is in dispute;

but if he should attempt to enforce that judgment by execution, he might be stopped by the injunction of the bankrupt court.

The bankrupt court does not attempt to enjoin the State court; nor does it pretend to give the State court permission to exercise its functions. The State courts stay proceedings because they are required to do so by the paramount law, and they receive and give effect to the discharge as a complete bar for the same reason. The bankrupt court may deal with and control the plaintiff; in a proper case it would grant him leave to prosecute his suit to judgment, and in a proper case it would forbid him to enforce that judgment by execution, or otherwise than against the estate in bankruptcy. Where the plaintiff obtains leave of the bankrupt court to proceed, the State court may go on and render judgment, because the law authorizes it to do so, and it is to be presumed that the State court would, in obedience to the same law, stay or refuse to allow execution on the judgment thus obtained, or quash it if issued inadvertently.

In Eyster vs. Gaff, 91 U. S. (1 Otto) 521, a suit was brought to foreclose a mortgage, and the decree was rendered on the first of July, 1870. On the ninth of May, 1870, the mortgagor, defendant in the suit to foreclose, filed his petition, and on the eleventh of May he was adjudicated a bankrupt, and on the fourth of June, nearly a month before the decree of foreclosure, the assignee was appointed.

The assignee did not choose to become a party to the suit to foreclose, and the property mortgaged was sold under the decree.

A tenant of the bankrupt was in possession, and he claimed the right to retain possession on the ground that the proceedings in the suit to foreclose, subsequent to the adjudication in bankruptcy, were void. The purchaser brought suit to eject him, and obtained judgment, which was affirmed by the appellate court, and the case was taken by writ of error to the Supreme Court of the United States. Justice Miller, delivering the opinion of the court, at the October term, 1875, said;

" It is a mistake to suppose that the bankrupt law avoids, of its own force, all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition.

" The court in the case before us had acquired jurisdiction of the parties and of the subject matter of the suit. It was competent to administer full justice, and was proceeding according to the law which governed such a suit to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending.

" It was the duty of the court to proceed to a decree as between the parties before it, until, by some proper pleadings in the case, it was

informed of the changed relations of any of the parties to the subject-matter of the suit. Having such jurisdiction and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void. It is almost certain that if, at any stage of the proceedings before sale or final confirmation, the assignee had intervened, he would have been heard to assert any right which he had or set up any defense to the suit. The mere filing in the court of a certificate of his appointment as assignee, with no plea or motion to be made a party or to take part in the case, deserved no attention and received none. In the absence of any appearance by the assignee the validity of the decree can only be impeached on the principle that the adjudication of bankruptcy divested the other court of all jurisdiction whatever in the foreclosure suit. The opinion seems to have been quite prevalent in many quarters at one time that the moment a man is declared a bankrupt the district court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other courts, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property or of contracts into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view.

"The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of his rights by the bankruptcy of his adversary.

"The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit of the assignee on the circuit and district courts of the United States, it is concurrent with and does not divest that of the State courts."

The same learned judge, in Bracken vs. Johnston, in the Circuit Court for the district of Iowa, at the October term, 1876, reported in the Central Law Journal of the fifth of January, 1877, decided that the proceedings in bankruptcy did not oust the State courts of their jurisdiction. It was the case of an attachment levied within four months of the commencement of the proceedings in bankruptcy. "The court may go on," says Justice Miller, "and render judgment and may execute it, if property subject to execution can be found, but the lien of the attachment is at an end, and the assignee is entitled to the property or the proceeds."

In Claflin vs. Houseman, decided in the Supreme Court of the United States at the October term, 1876—Chicago Legal News, twenty-third of December, 1876—Justice Bradley, the organ of the court, repeats the language used by Justice Miller in Eyster vs. Gaff, to the effect that the jurisdiction of the State courts is not divested by the proceedings in bankruptcy; and reaffirms that doctrine.

The simple fact that the bankrupt law enables the assignee to prosecute and defend suits pending in the name of the bankrupt, in the same manner and with like effect as the bankrupt might have done, or as if originally commenced by the assignee, is a sufficient manifestation of the legislative understanding, intention, and will, that the jurisdiction of the State courts should not be divested by the bankruptcy.

We do not think the assignee has any right in this case to interfere in the litigation between the appellants and the appellees, since he has appeared only through counsel at the hearing for the single purpose of asking that the proceedings be perpetually stayed.

Where the assignee intervenes at a proper time to defend a suit pending against the bankrupt, he has no right to demand a stay of proceedings; nor can he plead the final discharge in bar. Where no property of the bankrupt is to be affected by the proceedings, the only object of prosecuting the suit to judgment is to ascertain the amount of the debt, which may afterward be proved in bankruptcy. Besides, by the very terms of the law, the application for a stay of proceedings is to be made by the bankrupt himself, (section 21, Revised Statutes, sec. 5106) and the discharge is granted to the bankrupt for his personal benefit, protection, and relief. Sections 32, 34, Revised Statutes, sections 5114, 5119.

We proceed therefore to inquire what effect is to be given to the plea and discharge filed in this court by the bankrupts, so far as they are personally concerned, leaving the assignee entirely out of view.

By the constitution of Louisiana, article 74, this court has appellate jurisdiction only, except that it may grant certain writs, habeas corpus, mandamus, prohibition, etc., in aid and as incidents of its appellate jurisdiction. In the exercise of this jurisdiction it reviews the judgments and proceedings of inferior courts, "in so far as it shall have knowledge of the matters argued and contested below." C. P., article 895. And this knowledge it can have only by reference to the transcript of the record and proceedings in the court below, brought up by the appeal. C. P. article 896.

In general, parties are not allowed to plead in this court other matters than those which were before the inferior court. There are, however, certain peremptory exceptions which may be pleaded in this court, although they have not been pleaded in the court below, such as

prescription and *res adjudicata;* but even these exceptions can be pleaded in this court only where the proof in support of them appears on the face of the proceedings in the lower court by the mere examination of the record. C. P. 902.

In Zollicoffer vs. Buggs, 3 Rob. 237, *res adjudicata* was pleaded in this court, and the proof was the decision of this court rendered at the preceding term. The court refused to admit the plea, because the proof did not appear on the face of the proceedings in the lower court and was not in the record of appeal. See also Carpenter vs. Bently, 12 Rob. 540.

In the New Orleans Gas-light Company vs. Hudson, 5 Rob. 487, the court, refusing to consider new matter, said: "This court is called upon to review the decisions of inferior courts on the facts and pleadings as they were presented to them, and will not listen to pleas not made to them."

Something may have occurred since the judgment appealed from was rendered which would satisfy or discharge it, but this would not make the judgment erroneous or enable this court to reverse or to avoid it, and if this court should undertake to receive a plea not made in the court below, and to hear proof in support of it not appearing on the face of the record, it would simply be usurping and exercising original jurisdiction in violation of the organic law.

In the exercise of its appellate jurisdiction this court is and must be ignorant of anything that may have occurred in relation to the parties or the cause, beyond that which appears in the proceedings of the lower court, except for the purpose of making necessary parties in case of death, etc., and we can no more admit this plea, or give effect to the discharge in bankruptcy than if it were a plea of judgment supported by a receipt and acquittance, or any other new matter not appearing on the face of the record.

When this court "once has acquired jurisdiction of an appeal, whether by transmission of the record, or by that of the citation served on the appellee, it can not in any case permit the appellant to withdraw his appeal without the consent of the appellee, and the cause shall take its course, whether the appellant make default or not." C. P. art. 901.

If we should reverse the judgment of the court below we would afford the appellants the relief which it is their right to demand. If they should make default, or refuse to prosecute their appeal, that would not dispense this court with the performance of its duty, "and the cause shall take its course." If we should affirm the judgment appealed from, our decree would give it no additional force or effect; nor have we the power, unless the court below has the power, to deprive the appellants of any of the benefits of the discharge in bankruptcy.

We have given very much more time and attention to this branch of

the case than we should have considered necessary but for the decisions in Fox vs. Weed, 21 An. 58, and Viosca vs. Weed, 23 An. 218, in the first of which Weed was appellee and in the second he was appellant. He was permitted to plead his discharge in bankruptcy granted on his petition filed after the appeals had been returned into this court; and upon the exhibition of the certificate the appeals were dismissed. These decisions were undoubtedly in accordance with the opinion generally prevailing at the time they were rendered, that the jurisdiction of the State courts was divested by the proceedings in bankruptcy. In the language of Justice Miller "there is nothing in the bankrupt act which sanctions such a proposition," and the Supreme Court of the United States "has steadily set its face against this view."

There seems to be no legal obstacle to the final disposition of the cause, and we proceed to consider it on the merits.

Hoffman & Co., of New Orleans, shipped to Serra é Hijo, of Barcelona, four hundred bales of cotton, against which they drew for £6630, at sixty days sight, payable at London. The invoice and bill of lading reached Barcelona before the arrival of the cotton, and the bill of exchange was accepted on the sixth of May, 1872. Serra é Hijo, by letter of the thirteenth of May, which Hoffman & Co. received on the thirty-first of May, advised Hoffman & Co. of the acceptance of the bill and of its equivalent in dollars, *valeur au 6 Mai*, $32,557 71.6. In a note at the foot of this letter the particulars are given showing how this amount is arrived at, and we consider the expression *valeur au 6 Mai* as informing Hoffman & Co. that, in order to meet the bill at maturity in London, Serra é Hijo had expended a sum of money which was equivalent to $32,557 71.6 cash on the sixth of May.

The cotton was sold at different dates from the twenty-sixth of August to the twenty-ninth of November, and on the eleventh of December a detailed account was made out showing a balance against Hoffman & Co. of $1945 29.1, which was forwarded by Serra é Hijo, with a letter of same date, and received by Hoffman & Co. on the eighth of January, 1873.

Two days after, on the tenth of January, Hoffman & Co. acknowledged receipt of this account and letter, and say:

"Votre compte de vente à nos 400 balles ex Castilla a été trouvée parfaitement correcte, et la petite solde $1945 29.1 en votre faveur a été portée a votre credit. A l'occasion d'une nouvelle affaire avec votre honorable maison nous allons deduire le montant de nos tirages."

Serra é Hijo were not satisfied with the mode of settlement proposed, and they drew on Hoffman & Co. for the balance due, to the order of Avendano Brothers.

Hoffman & Co. did not pay this draft, and on the seventh of May they wrote Serra é Hijo asking for indulgence. In that letter they say:

" Comme vous ne devez pas avoir besoin absolument de cet argent, nous ne doutons que vous nous obligerez en attendant un moment plus propice."

In an interview with Avendano, Hoffman & Co. said they had in writing acknowledged this debt, and they would be glad to pay it in another purchase and shipment of four hundred bales of cotton. This last interview was probably about the twentieth of June, and this suit was brought on the thirtieth of June, 1873, to recover the balance, $1945 29 in gold, with five per cent interest from the twenty-sixth of November, 1872.

In their answer Hoffman & Co. complain that Serra é Hijo charged interest from the sixth of May, the date of acceptance, on the $32,- 557 71.6, equivalent of the bill for £6630, whereas they should have charged interest from the maturity of the bill.

As the acceptors, Serra é Hijo, lived at Barcelona, and the bill was payable at London, they were compelled to remit the necessary amount to London. Obviously they must have done this by purchasing exchange on London, and it is manifest that they charged interest from the sixth of May because, whatever it cost them to place the required amount in London, they reduced it to cash on the sixth of May. This is fully explained by Avendano in his testimony, and is sufficiently shown by the letter of thirteenth May; and Hoffman & Co. must have understood the transaction perfectly when, on the thirty-first of May, they received that letter.

In the account of the eleventh of December special reference is made to this letter of the thirteenth of May, and all that relates to the bill on London is set down in the account with such prominence that one could hardly glance over it without seeing precisely what it cost to pay the bill, and that interest was charged on that amount from the sixth of May.

Hoffman & Co. also plead that they had not looked into the account when, on the tenth of January, they acknowledged it to be perfectly correct, and informed Serra é Hijo that the balance shown by that account had been carried to their credit. It was proven that the account was handed by Hoffman & Co. to their clerk, whose duty it was to examine it, and he reported it correct, and the letter of the tenth of January was written by one of the members of the firm after this.

Such a plea comes with bad grace from merchants whose daily business it is to deal with accounts. It was the work of a few minutes to run over this account. It contains full particulars, and occupies one side only of a half-sheet of account paper, and it is plain and easily understood. It is possible, hardly probable, that a merchant would have an account of the character of this in his possession for two days without having the curiosity, and finding the time to examine it, but it would be most

extraordinary if he should carry the balance shown by that account to the credit of his correspondent, and so advise him, without having first ascertained and verified its correctness. It is not possible to account for the repeated acknowledgments by Hoffman & Co. of the correctness of this account upon any other hypothesis than that it does show truly the balance due by them to Serra é Hijo.

Appellants also complain and plead that Serra é Hijo should have sold the cotton at or before the maturity of the bill; and if they had done so, as duty required, the result would have been a balance in favor of Hoffman & Co. of at least two thousand dollars, which amount they claim in re-convention.

It is worthy of remark that the first complaint or objection of Hoffman & Co. to this account is made in their answer to the suit, filed on the third of November, 1873. There is no proof of negligence on the part of Serra é Hijo; and it must be presumed, in the absence of proof to the contrary, that having advanced so heavily on this cotton Serra é Hijo desired to obtain the highest price possible, and that they used their best judgment and discretion for that purpose.

We do not think it necessary to go more minutely into the evidence, the substance of which we have already stated. It suffices to say that the letters of Hoffman & Co. of the tenth of January and seventh of May, their acknowledgment to Avendano of the indebtedness in May and June, their evident desire to continue commercial relations with Serra é Hijo, and their direct proposition to purchase and ship another lot of four hundred bales cotton, are absolutely irreconcilable with the idea that they had any just cause of complaint, or reasonable objection to the account.

The verdict of the jury and the judgment of the court below are strictly in accordance with the law and the evidence, but this is not a case for damages as prayed for by appellees.

The judgment appealed from is therefore affirmed with costs.