BREAUX, O. J.
On the 17-th day of April, 1905, Mrs. Alfred J. Mayer, tutrix, and her husband, Alfred J. Mayer, filed their account of tutorship and of administration of the succession of the late Constant Guillebert.
The children of Mrs. Mayer, to wit, Adele Constant Guillebert, wife of Dr. A. T. Bar-bin, assisted and authorized by her husband, and Camille Modistine Guillebert, opposed this account on a number of grounds.
The late Constant Guillebert came to this country years ago from France and settled at Moreauville, in the parish of Avoyelles, where he engaged in mercantile business and farmed on a small scale.
He several times returned, to the place of his birth and to his former home.
On one of these visits to his former home, he contracted marriage with Marie Grenier, who was the adopted daughter of Mrs. St. Laurent, his sister.
After his marriage, -the three, the husband and his wife and Mrs. St. Laurent, came to this country to reside permanently at the home of Constant Guillebert, in Avoyelles parish.
Some time after they had established themselves, the sister, Mrs. St. Laurent, married J. A. Boyet.
She died, and on her deathbed left a will.
Opponents attacked the will.
The suit came up to this court on appeal.
*995 Tlie plaintiffs, representing their wards, entered into a compromise with J. A. Boyet, the surviving husband of their late aunt.
This compromise was authorized by the court.
The complaint of opponents is that, owing to the negligence of the accountants, appellants, they lost their inheritance.
Of this later.
We infer that the Guilleberts were fairly prosperous. Constant Guillebert acquired property. He advanced largely to his customers and secured his advances by ventes á réméré.
This has no significance save that it accounts for the large number of claims, many of them small, nearly all secured by ventes d réméré, which formed part of his estate.
The many claims of the succession, nearly all small in amount, as Just stated, required attention of the accountants in settling the succession. Expenses were incurred to effect collections, and some of the claims were lost.
In November, 1884, Constant Guillebert was called from' his room in Moreauville about midnight and murdered by a person unknown.
The year following his death, his widow became the wife of A. J. Mayer.
Just prior to her marriage to Mayer, she was duly retained in the tutrixship of her children, and her husband, Mayer, became the co-tutor of the children.
It may be said here that the children were not neglected, and it seems that they were kindly treated by their stepfather and by their mother and tutrix. They enjoyed about the same opportunities in their rearing as young persons in the neighborhood having means.
Whatever there was of neglect was in not keeping accurate accounts of expenses incurred in the management of the property of the estate.
The accountants relied in some respects on estimates in fixing amounts of indebtedness and in preparing .their final account.
That is not satisfactory.
We take up in the first place for consideration the inventory of the property of the succession.
It is lengthy and takes up considerable space in the six good sized transcripts before us. Unfortunately, the inventory was not, in all respects, correctly taken.
The total of the property inventoried is $51,207.61, detailed as follows by accountants in their final account:
Personal property .$40,727 50
Lands belonging to estate. 4,050 00
With right of redemption. 6,430 00
Making .$51,207 57
The tutrix and the stepfather of the opponents ask that the claim of the opponents be limited to an estate of $20,847.48 as coming to them. In lands, $10,480, which remain of the assets, and which they offer to deliver in personal property, $10,847.48.
The contention of plaintiffs and appellants is that many claims of the estate were worthless; nearly all good claims were collected at some expense, and that there was little in cash realized for the succession; that no wrong was done, as they acted in accordance with legal advice throughout and at times under the decree of court.
The opponents, on the other hand, urge that the accountants, early in their administration, left this country and dwelt abroad three years, left the property in charge of an agent, who neglected the affairs of the estate, and that there was a loss to them for which the accountants should be held liable.
This opposition was, in part, maintained in the district court.
The first account, as recast by the district judge, was homologated.
Plaintiffs appealed.
*997 Opponents joined in the appeal and asked for an increase of the judgment of the district court in a number of particulars.
We took up the different issues brought up by the appeal and discussed them as follows:
Provisional account of 1886:
It was not sustained by vouchers save two. The others were lost, or could not be found. They were applied for on the trial of the opposition to the final account, but were not produced. There is no reason to infer that the accountants are responsible for their loss. It seems that they were deposited in court.
The note of evidence taken on the application to homologate this account shows that vouchers were offered in a bunch.
The attorney of the succession, in 1886 (who was not the attorney who now represents the tutrix and co-tutor), as a witness, as appears by the note of evidence, filed in 1886, when the account was partially homol-ogated, stated that the privilege claims placed on this tableau, and the ordinary claims as well, were due and settled as such by the tutrix.
In regard to one of the items of the inventory, he testified as follows: The amount which was in the hands of P. G. Gibert was properly reduced, the witness stated, from $10,566.06 to $7,224.33.
He also testified about cotton in gin of the late Constant Guillebert: He stated that this cotton did not belong to Guillebert; that it was in the possession of Guillebert for the account of some of his debtors; and that it did not become his property.
The amount involved is $1,200. We will have occasion to specially refer to this item later, as it is strenuously opposed by the opponents.
The attorney, Mr. Hall, at that time (in 1886) next asked the court to homologate the account as prayed for by the plaintiffs.
The undertutor of the minors, on applica-1 tion to homologate this tableau of 1886, answered the application and alleged that the tableau was correct.
The judge, despite the testimony of the attorney, and the consent of the undertutor, did not homologate the whole account of 1886. He only homologated some of the items of the account as follows:
1. Amount deducted from amount in hands of P. G. Gibert. $3,042 43
2. 'Credits not allowed by inventory on note of A. C. Gremillion_ 740 00
3. Cotton inventoried, claim for cotton before mentioned, but it is claimed belonged to other parties 1,228 00
4. Note of J. J. Baptiste, which it is claimed was not due. 21 00
5. Account of Norma Lavallais. 34 75
6. Note and judgment against B. Mayeux . 37 go
7. Note of Jos. Lacour on inventory, but it is claimed was not found 6 50
8. Mortgage note of Oliver Johnson, which it is claimed was paid by vente a. réméré. 200 00
9. Credit omitted in judgment of E. Coincon . 30 00
Total . $5,695 68
The other items on the account were not homologated.
Tlhe statement of the judge in homologat-ing this account is incongruous. For instance:
In the first part of the judgment of homol-ogation, he ordered the debts as classified to be paid and that all the credits claimed be allowed. And thereafter, as a part of the reasons for judgment, he directed that credits not supported by proof be disallowed, reserving to the tutrix the right to prove them up in a subsequent tableau, and that, with the exception of credits a® made, the provisional tableau be homologated.
These so-called “reasons” are not clear. They are conflicting.
This left the question of indebtedness to a considerable extent open for future accounting. We none the less are of opinion that the items, of which we give a list above, were homologated.
*999 We pass from title tableau of 1886 to the provisional account of 1896.
On the credit side of the account, the first article contains the following:
1. Debts and errors in inventory allowed by judgment of court homologating first account.... $ 5,690 18
2. By claim paid and recognized by judgment homologating said first account. 18,196 79
Total . $23,886 97
And then follows a long list of claims of different amounts paid for costs, taxes, and attorney’s fees and for improvements on the property of the succession.
On this account also, there is a list of bad debts, amounting to a considerable sum.
This second account was regularly homolo-gated, and vouchers supporting the different items were produced and introduced in evidence.
We will have occasion later to again briefly refer to these two accounts (1886,1890).
Pinal account:
The facts relating to this account do not require any extended statement at this time. Part of the items are taken from the first and second tableaux, especially the uncollectible debts and errors carried in these accounts (1886, 1890). There are a number of items for taxes, fees, costs, and other charges taken from these accounts, besides others of a date subsequent.
The opponents met this account with an opposition detailing their complaints in full.
The issues it presents are before us for decision.
The learned judge on the trial of this opposition changed a number of the amounts and wrote another account in full and made it part of his elaborate opinion.
The account consists of a recasting of the account presented by plaintiffs.
The district judge allowed $19,156.96, balance due to Mrs. Barbin, the opponent; and to the other opponent, Camille, an heir, $18,-300.81.
With this statement, we will take up the decision of the issues.
Recurring to the tableau homologated in 1886, i. e., the first tableau:
The contention of the accountants is that it is a complete tableau of debts; that they are completely protected by the decree of its homologation; that it is res judicata.
That contention does not commend itself. In our opinion the first tableau, as already in effect stated, was only a partially homol-ogated account. It left the question as to the approval of a large number of debts open for future proof to be offered by the accountants in another account.
They were provisional accounts.
To the extent that the account was homol-ogated, it affords some protection to the accountants, it is true.
Where no testimony has been introduced to show error, they may, under certain state of facts, be given some effect.
The following rule regarding tutors is sustained by authority:
The tutor’s annual account is provisional and does not conclude the minor. Tutorship of Scarborough, 43 La. Ann. 315, 8 South. 940; Cochran v. Violet, 37 La. Ann. 221; Stafford v. Villain, 10 La. 319; McGehee v. Dupuy, 7 Rob. 229; Lay v. Succession of O’Neil, 29 La. Ann. 722; Succession of Tucker, 13 La. Ann. 464 ; Rev. Civ. Code, art. 356.
The tutor who administers ex virtute officio presents a tutorship to the minors none the less. Succession of Scarborough, 43 La. Ann. 315, 8 South. 940.
The administrator’s account is not binding on the minors. Succession of Mitchell, 33 La. Ann. 353.
Be that as it may, we have seen that the first account was only partially homologated, and, as to the second, we will state that plaintiffs and appellants urge that, even if the account of 1886 was not entirely homolo-gated (only partially), the claims thereon were carried on the second tableau (1S90), *1001 and that these unapproved claims (if unapproved) were thereby approved when the tableau of 1890 was homologated.
There would be great force in this contention if the accountants had presented their different items of homologation with some detail on the tableau and had sustained each with proper voucher and approval.
This was not done. On the contrary, many of the claims were charged in" a bunch in the second tableau as having been approved in the first account, when in reality they had not been so approved and homologated.
At first blush, on examining this item on the second tableau (1890), it is apparent that an error has been committed by carrying claims thereon before mentioned.
This error vitiated the second tableau at least to the extent that it approved claims introduced as having been homologated in a prior tableau that had not been homologated.
Now, as to the tableau of 1890 (of which we have already had something to say in so far as it relates back to the tableau of 1886):
The order of homologation is in regular form, and, with the exception of the statement it contains of claims homologated that had not been homologated, it must be given some effect as a provisional account. We will give it effect as an homologated account, although, owing to the errors before mentioned, it is not to a great and unlimited extent binding. It will serve as a statement of debts and credits.
We will consider it in that light.
They are only tableaux of debts, and, while absolutely binding as relates to creditors, they have not an absolutely binding effect as between the accountants and their wards. Hansell v. Hansell, 44 La. Ann. 548, 10 South. 941; Reihl v. Martin, 29 La. Ann. 17; Curatorship of Beecroft, 28 La. Ann. 824.
It unquestionably devolved upon the 'accountants to prove that they had paid claims due by the estate and to account for all that they had collected. While uncollectible debts should have been deducted, it must be evident that they were uncollectible debts; and, while errors may be corrected in the inventory, it must be proved that they were errors.
The accountants, unfortunately for them, kept no regular account.
They, in accounting, reduced the balance coming to the heirs to a small sum, while the heirs claim a large amount and seek to minimize the expenditures charged against the estate.
The accountants gave too much importance to the two tableaux homologated, one in 1886, and the other in 1890. They desire to have them accepted as correct and satisfactory, although the first particularly is not "sustained by proof.
The opponents, however, do not attach the least importance to these accounts even in those respects that they are sustained by evidence.
We will, as briefly as possible, take up the final account, and occasionally go back so as to trace some of the items to the tableaux of debts of 1886 and 1890.
In the last account, the total amount of the inventory was taken as a basis. The rents were added and interest thereon, and certain claims not previously accounted for were charged. In that manner the grand total of $78,180.86 was reached.
The total amount of credits, which the judge allowed in the account prepared by him, amounted to $31,710.73, as due accountants, leaving balance to be accounted for to the two heirs, according to this account less individual indebtedness to the tutrix, $45,-469.63.
After individual indebtedness deducted, it leaves to Mrs. Barbin, one of the opponents, $19,156.98, and to the other opponent $18,-309.81.
These amounts are increased by comparatively small sums as will be seen by our decree.
*1003 We may as well now dispose oí tlie individual indebtedness of each of these heirs to their tutrix by the statement that it consists of amounts due by them for their support and education during their minority.
The opponents do not contest the amount charged on the tableau as allowed by the district judge for this item, and this much, we are pleased to state, is settled and requires no further 'attention, for we are of opinion that the amounts allowed by the district judge are ample.
Passing from this uncontested item, we take up another, very much contested by the opponents.
The tutrix admits that she is indebted to her children for rents collected on the estate in the sum of $9,500.
The contention of opponents is that this is entirely insufficient.
The leased lands consist of seven separate small tracts:
Home place.50% acres
Lacour x>lace.31 “
Johnson .25
Hayes .20 “
Total .131% acres
The foregoing are classed as bayou lands and have more value for cultivation.
The following are prairie lands, having less value for cultivation:
Carmoucke tract.15 acres
Descalet place.13 “
Guillory .20 “
Total ...65 acres
Rental account:
We leave other questions and take up the question of rents.
At first the amount of rental allowed on this account appeared to us somewhat large. After having read the testimony and upon reflection, reduction to any extent does not commend itself.
The amount is fixed on the testimony of witnesses who testified as to rental values. Five dollars is about the rate. Learned counsel for plaintiffs admit that $6 an acre is about correct.
The accountants admitted quite a sum as due for rental; but this admission was made without an accounting. In other words, the accountants admit that they are indebted in the round sum; how made up does not appear. They do not state amount collected each year or for any period.
If we were to take as a basis for this account the testimony of the co-tutor, the rental would not amount to much. It would be much less than was admitted by the accountants. In other words, he admits $9,500 rental due, and that is all.
A minor on arriving at age has a right to know something of the management and how his account was made up.
We will have to let that amount stand as it is. The testimony does not justify us in making any changes in that respect. There is considerable said upon the subject on the part of witnesses for the accountants; but it is disconnected, and no testimony is made with reference to any account.
The question to J. Boyet was in regard to rents.
“Q. What is the rental value of land now?
“A. Five dollars an acre.
“Q. What would you consider the average price of land in the last 20 years on Bayou Des Glaise?
“A. Five dollars.” (T. p. 88.)
Counsel for plaintiffs in the brief mention $5 an acre as the rental value.
Counsel, however, do not admit the number of acres claimed by the opponents.
The testimony proves that 25 acres of the Descant lands were cleared (T. p. 24), and again about 50 acres of this land were cleared on the west side of the road. (See, also, p. 107.)
It was even stated: The Carmouche tract contains 200 acres.
The Guillory tract contains 80 acres. (T. p. 583.)
*1005 This, together with other lands in regard to which there is no dispute as to acres, we have found, in regard to the number of acres, is over the number for which rental is claimed.
The testimony shows that part of the land was flooded by water, but in a general way without specifying whether the water remained on the land, to what extent there was damage, or what was done in that connection ; and the years of the overflow are not stated with absolute certainty; only the most general reference limited to 1890 and confined to the Johnson place.
With this testimony before us, we do not think we should change the amount.
Although we arrived at the conclusion slowly, we concluded, at last, that we would leave the annual rental, as found by our learned brother of the district court, as it is.
He divided the rental period into four and gradually increased the amount of rent as the value of land increased.
Considering these different years and the difference in the respect stated, we are of opinion that the total is about right.
Interest:
The item as relates to interest, dating from the homologation, will not be changed. It was properly calculated from the date of homologation of the last account, and, taking that date as a basis, an average was arrived at for the calculation.
The opponents seek to have this interest calculated on an amount in hand on the date of the inventory, made not many months pri- or to the date of the homologation of the tableau.
We do not agree with the opponents.
The inventory was not carefully made; it did not serve as a basis such as a carefully made inventory is in the proper settlement of a succession. It has in some respects the appearance of slighted work on the part of those by whom it was taken and made; and, besides, the amount did not pass from the-hands of the tutrix, administering the estate as tutrix, on to the tutrix and co-tutor at that time.
A tutor who administers a succession with the consent of the debtors can hold the property as tutor only after he had fully administered its affairs. Tutorship of Minors, 44 La. Ann. 288, 10 South. 858.
But, above all, the tutrix had paid some debts, and the affairs of the succession were in such an unliquidated condition that interest from the date of the inventory would scarcely be a fair and legal charge.
The interest will, therefore, remain as it is.
We will add as to interest:
The judge of the district court allowed $4,546.87 interest.
1-Ie, to the end of determining this expensive litigation, fixed an amount for interest on equitable consideration. In a general way he allowed certain credits to the accountants and interest on the credits.
In regard to many of the credits, their dates are not established.
On the other hand, as relates to the asset side of the account, the judge allowed the amount stated, which he conceived to be fair.
The accountants are charged for rent during a period ,of 19 years.
The places rented were small. The lessees were farmers, who dealt on small scale, as we understand, made partial payments at different times.
It may be, for all we know, that they paid by delivering a part of the crop in settlement.
The testimony shows that a horse was taken in part payment.
In another instance, one of the lessees constructed a house, and his wages as a carpenter went to the payment of his lease.
In this way it seems that the amounts were collected at different times, but the dates were not given.
*1007 It was after having considered, the situation brought about by this illegal way of doing business that the learned judge of the district court in some respects assumed data sufficient to arrive at a conclusion in regard to this instance.
We have gone over the account and have made calculations of our own only to find that we could not make them exact.
By calculating the interest from a certain date, it is easy enough to arrive at another conclusion. But after having done this, we have not found it more satisfactory.
We arrived at the conclusion that in this succession, involving considerable sums, we would adopt the conclusion of the judge of the district court, although it was reached differently from the one at which we had arrived. It was a matter of a few hundred dollars. We do not think it would justify us in setting aside the amount found by the district judge, after painstaking care and attention on his part.
The interest found by him will remain — a conclusion we have reached after thought and mature deliberation.
This litigation must be brought to an end. These accounts must be settled. They can only be settled on an equitable basis. A precise and exact calculation is out of the question because of the want of dates of amounts charged against the accountants and of amounts paid by them.
On leaving this point, we will state: $12,-125 was taken in the district court instead of the whole amount of rent, $15,025, and interest was computed thereon for 7% years. We will not take another amount as the basis for calculating interest; taking into consideration the entire case, the interest should not be increased.
The complaint of opponent at this point is that the learned judge should not have allowed interest on the former amount and for that length of time, but that instead the whole amount of the rent should have been taken and interest allowed from year to year at the end of each year to the date of the filing of the account.
We have already said: Evidently the rent was collected with difficulty. Many of the amounts were lost for which the tutrix and co-tutor must account. We think that there would be injustice in increasing the amount of interest.
Even the opponents are at a loss about dates.
Opponents have it, relative to the amount of $3,047.57, an item not connected with rent, that the judge adopted 8 years; that it should have been 12 years instead.
There is no more basis for the 12 years than there was for the 8; the only difference is that the S years appears to us equitable and just.
Leaving opponents’ ground abodt interest, we take up the objection of the accountants:
The latter object to the payment of any interest at all.
We can only say that it is not possible to, relieve them from the payment of all interest under our jurisprudence.
The following decisions explain in full and relieve us from the necessity of any comment: See Hollingsworth Case, 45 La. Ann. 134, 12 South. 12; Succ. of Trosclair, 34 La. Ann. 326; Vance v. Vance, 32 La. Ann. 180.
Tutor’s commission:
Opponents ask to have the amount of the commission of the tutrix on rents and revenues stricken from the account and in that respect amend the account.
It is not often that occasion arises before the courts requiring decision as to such a commission between the natural tutrix and her wards.
The contention, on the part of the opponents, is that the administration has been prejudicial to the minors; that there has been decidedly bad management.
*1009 We readily concede that there was want of judgment in the management, a failure to attend closely to the affairs of the succession; hut we are not of the opinion that the result was detrimental to the succession. We are firmly of opinion that, if accurate accounts had 'been kept o'f all the dates in the administration, the heirs would have received considerably less.
The losses by the poor administration really fall upon the accountants, not upon the heirs.
True, the answers of the tutor were vague and general, not satisfactory at all. These answers did not prove beneficial to the accountants ; but, on the contrary, they were properly construed against them. It was for them to render a full, fair, and complete account.
As they failed in that respect, they were condemned to pay at least as much as they would have had to pay if they had kept a regular account.
The presumption is that certain claims were paid in full. This is another proposition pressed upon our attention by opponents.
The contention is that the claims that were not carried on the inventory as worthless or uncollectible are presumed to have been collected in full.
Some of the claims were valued by the appraisers at less than their face value. They were collected in full, but in accounting, owdng to a very gross mistake on the part of the accountants, they charged themselves only with the amount at which these claims had been appraised.
Without any difficulty, this was brought to light.
The co-tutor, without any attempt at concealment, on question propounded, owned at once the true amount of the collection whenever he was questioned, and in every instance the judge of the district court charged him with the full amount collected.
There are a few claims in regard to which no direct question was asked, for the reason, we infer, that a larger amount was collected of these claims than the amount at which they were appraised. If a larger amount had been collected, learned counsel would unquestionably have brought it out.
The court and attorneys went through the whole of these claims. It was a thorough investigation.
We do not think that the amount should be charged unless it appears that it has been collected and not accounted for.
George L. Mayer debt:
There is testimony showing that the amount was collected from the debtor. See pages 551 and 55ü of the Transcript.
The co-tutor admits having collected the amount.
We therefore give credit to the minors for it with interest from the time that it was collected on April 7, 1891.
Relative to the George Mayer note, the following is of record:
“Q. Well, the amount of the claim against George L. Mayer was $450, was it not?
“A. Yes, sir.
“Q. Then you got the clerk’s costs?
“A. Yes, sir.
“Q. And then you have interest from September 9, 1884, until paid (T. p. 135), $154.31?
“A. Yes, sir.
“Q. That would make a total of $611.01?”
And this amount is allowed by us as due by accountants to the succession.
The next item we will take up to which objection was urged by opponents was No. 136 of the inventory, as uncollectible.
There are several objects forming part of this item.
The judge of the district court allowed $95.33. An additional amount of $50 is claimed. It is not evident that the last.amount is due. We concluded to leave this item as it is. It includes also the price of a horse. Taken together, it appears as correct as fixed by the court a qua.
*1011 Item No. 23 we will also pass without any comment for similar reasons. The $100 claimed will not be added.
These claims were carried in the second account in greater part, not collectible, and the balance, as worth $1. The court allowed $16. The facts sustain the correctness of the amount allowed.
We haye not found anything in the testimony to lead to the conclusion that there was error in the decision regarding this item.
We think that, considering all the testimony, the decision has done justice between the parties on this particular point.
Another serious objection urged by the opponents, also connected with this first account, is that the item of $1,220 on that first account, cotton in the possession of the succession, as stated in the account, and for account of certain clients of the late Constant G-uillebert.
The homologation as made of this first account included this item. It must remain. There is no testimony before us sustaining the contention of opponents. It does not appear that any part of the cotton was ever in the possession of accountants.
This amount was properly deducted in the first account. It is not a claim for which the accountants can be held.
Complaint is urged by opponents as relates to the St. Laurent claim, $7,500.
Opponents claim this large amount without sufficient evidence to sustain the claim.
There was a compromise made with J. A. Boyet, who, as we have noted before, late in life became the husband of Mrs. St. Laurent.
It was charged that by improper influence at the death of his wife he was made her universal legatee.
The opponents were the heirs of their aunt, Mrs. St. Laurent, in case of the nullity of the will. A compromise was made.
Boyet failed to comply with its terms. The property ánd amount he was to pay under the compromise was not paid. He, as we take it, circumvented the tutrix of the children and escaped from a legal liability.
The opponents charged that J. A. Mayer offered in payment an amount of United States bonds.
There was error of judgment possibly on their part in not accepting the bond. This is a matter for which the husband would be liable if we were itching to find liability.
The whole business is veiled in mystery and uncertainty. Above all, however, it does not appear that the mother and tutrix, and the co-tutor also, for that matter, were anxious to collect the amount.
It is not a loss for which they should be held.
It remains that the tutrix never collected the claim. She lost it. The compromise had been advised by counsel.
Another claim of opponents as to property under the names of Dowdy:
The opponents claim two lots of ground in Markville.
They were bought by J. A. Mayer in 1891 as agent of his wife.
The title passed to her, and it remains as hers.
The complaint of the opponents is that it was bought with their funds. This complaint is not sustained by proof.
The further complaint is that they (Mayer and his wife) have admitted that it was the property of opponents, and that they err in refusing to be bound by their admission.
There is assumption by the opponents on this point.
Mayer and his wife explain, through the testimony of the former, that they applied to be permitted to sell certain of the minors’ property, and to that end to cancel the mortgages thereon; that through error of the attorney this property was included in the petition made by them in their respective capacity to cancel the mortgage; that they *1013 never intended to admit that the property belonged to the succession of Guillebert; that it was paid for from their own funds. It was bought years after the death of Guillebert, and it was never intended to include it among the assets of his succession.
This claim has nothing upon which to stand save an illegality made by the attorney in error in describing the property in a petition.
It is true that when Mayer, agent of his wife, bought this property, he included the names of the opponents, minors, as vendees; but Mayer was only agent of his wife and had no authority to represent the wards in the transaction. They had naught to do with paying for the property and in reality have no claim to it. There is no claim made by accountants for any amount paid by . them on this property.
We take up for consideration and decision the items which are carried on the final account as amended by the district judge to which accountants object, and other items which they contend should have been allowed by the district court.
The first is the amount paid to the late L. J. Ducote, as notary and attorney, $15:
Fees of attorney:
, This is the first claim in the order that claims are listed.
The attorney to whom a fee of $150 was paid by the accountants was not the regularly retained attorney of the succession. There was a fee of $15 due to this attorney as notary for holding two family meetings.
The court a qua did not allow this claim on the ground that there was no necessity of retaining the services, as there was another attorney regularly employed to settle the succession at a stipulated fee of $3,000, which was ample.
Despite -this employment, a number of attorneys had been employed at different times.
It is settled by repeated decisions that only one attorney or one firm should be employed to assist in administering and settling a succession.
Since the decision in Succession of Gayle, 27 La. Ann. 547, this court has always decided, when the succession has a retained attorney to settle its affairs, other counsel should not be employed to conduct its ordinary business and settle the estate.
We must adhere to the decisions as to the fee of attorney. There is no reason to make an exception in this case. The fee for services as notary public is due. The accountant testified, and his testimony is accepted, that one of the fees was paid to the late Judge Cullom. He was employed while the attorney of the succession was away and ill, a period of about 12 months.
Now as to the sum paid E. North Cullom:
The amount of $130 will be allowed. There is direct testimony proving that there was necessity for the services, and'that they were tendered while Mr. Hill, the attorney of the succession, was ill and absent from the parish. Services rendered under the circumstances disclosed must be allowed.
A house on the Descamp place:
This house was built in 1886 or 1888.
At first the amount claimed on the account was larger than now claimed. It was reduced during the trial in the district court; none the less it was disallowed by the court.
They now urge that it cost them $500. The costs are not detailed. They are based on an estimate.
The price was properly disallowed.
Tutors cannot put up new buildings on minors’ property and claim their value at the end of the tutorship.
If, however, it is their building, they should have it, if the opponents do not choose to pay the price asked, as it is on their land.
The opponents are given 30 days within which to make up their miuds whether they will take the property or not. In case they *1015 do not, the property shall be rémoved within reasonable time after the 30 days.
The next item, being for $400, was reduced to $272, a reduction to which the accountants object.
The receipt in evidence shows that the amount was partly due by the succession and partly by Mr. and Mrs. Mayer.
A compromise was entered into.
We have arrived at the conclusion that the reduction affords no good ground of complaint.
The attempted explanation of the accountants about amounts previously paid on account of this claim of Dr. Lougare does not to our mind explain to the extent of showing that the judgment is erroneous in this respect.
The néxt item, $27, was for improvements on the Moreauville home place. First, as forming part of this item, is an amount charged for an addition to a store. This part of the item was properly disallowed, as it was in the nature of a new building and not strictly a repair of the building. Besides, it appears that this addition to the store was made for the convenience and occupancy of the accountants.
New fences and repairs amounting to $250 on the Moreauville place:
With reference to this part of the item, the accountant, J. A. Mayer, of the witness, was asked:
“In the years 1886 and 1887, your charge was for making all the fences and repairs, and so forth, on the home place?
“A. That was what I charged.”
These repairs, the testimony shows, were necessary. They are different from new buildings and improvements. This item in our opinion should be allowed.
The next item, being a small amount, was properly rejected. It was for fees of constables and justices of the peace. It does not show that it was for services rendered for the succession.
The receipt of officers should show that the service was for benefit of the succession, or for the benefit of the minors.
The next item is identified by referring to the names of J. D. and A. Lacour, for repair materials, $75. Their receipt reads: We hereby acknowledge having received of A. ,J. Mayer the sum of $75 for shingles and block and general repairs, Numa Lacour place, paid us by two years’ rent, 1895 and 1896 of said place, signed by the creditors.
As the accountants have accounted for the rental of the property, it necessarily includes this property for which rent has already been charged for opponents’ account.
The accountants are, therefore, entitled to credit for this rental which became their own from the moment they became the debtors of the opponents for the rent.
We are informed by statement in brief of counsel for accountants that this item No. 42, paid to O. Moreau for lumber, posts, and other material used on the Descamp place in 1902, amounting to $57.85, was not allowed because the judge said it was included in item 34.
We have considered the objection after having referred to the testimony. It was properly charged by the court a qua.
We are led to that conclusion by the statement in applicants’ brief (page 35) expressive of acquiescence, which leaves scant ground for complaint.
The judge increased item 34 to $92.85, instead of $38. (T. p. 490.)
Another item is for fee of attorney for defending suits brought by one of the opponents for ousting tire tutor from the tutorship, and to compel an accounting, and other litigation between these parties. The sum allowed covers the fee due by the succession; there is no good reason for an increase against the opponents.
*1017 The days of the parties to this litigation have at times been rugged and dark. They had to consult attorneys, and valuable services were rendered. As valuable as they were, we cannot charge them all to the succession. Jurisprudence forbids it.
We will stop a moment and digress, perhaps, slightly to state: The widow Guille-bert was left without property at the death of her husband. The management of a large estate fell into her hands.
She married a second time, and with the husband and the children of the first marriage they went to France, not to enjoy the gayeties of Paris, as averred by one of the opponents, but, on the contrary, they lived economically, occupied a pavillion on one of the sea shores of France, and sought there to earn a livelihood.
On leaving their home in Avoyelles, they placed the affairs of the estate in charge of an agent and paid him an extravagant commission on amounts collected by him.
There were a number of small claims. A number of suits were brought. The usual result followed when suits are too freely brought for small amounts; large bills of costs were incurred, and comparatively small amounts were collected.
On leaving France to return to America, they left one of their daughters at Maison de Santee, at which place she has been taken care of since; the mother paying the expenses. This heir was weak and infirm from birth.
On the return of Mr. and Mrs. Mayer from France, where they had been about three years, they found a neglected succession.
Thereafter they made some repairs on the property and collected some of the amounts due the estate.
A sister of Guillebert, who came to this country with him, married. A few years thereafter she died and left a will made on her deathbed written with her husband’s pen, it was charged.
This will was attacked by the tutrix. She employed special counsel. There was a heated contest. Counsel well earned the fee charged; but it should not be charged to the succession, under our decision, as an attorney amply paid was employed to attend to the business affairs of the succession and to settle it.
A compromise was arrived at with the surviving husband of the deceased sister. The husband never paid the amount he promised to pay. He circumvented the representatives of the succession.
Opponents sought to charge their mother with the amount lost. The mother acted in good faith. She is not charged with that amount. It was not due to her negligence that it was lost.
The elder of the daughters was sent.to a female institution of learning for four years. About the end of her studies, she married without her mother’s consent, who opposed the marriage only because of the youthfulness of her daughter, not that she had any objection to the son-in-law.
After the marriage, differences arose. The daughter, not of age, sought to oust her mother from the tutrixship.
Several appeals were taken to this court and are reported.
This suit followed, and after a lengthy trial it is now before us.
The minors secured as much as they are entitled to.
As to the appellants, they have none to blame but themselves. It was for them to keep account and render a satisfactory account.
It is evident in all this that the mother managed the estate as that of her children without much thought of law. As is frequently the case between mother and daughters, it was all for her daughters. That feeling seemed both in incurring expenses and in receiving amounts.
These sentiments and the confidence to *1019 which they give rise, and which continue until differences arise, cannot be taken into account.
The different items allowed on the above demand of the accountants- amount to (with interest) $666.25, to be added as claims which should not have been rejected and which form part of the sum to which accountants are entitled in settlement. The items to opponents, with interest, amount to $840.13.
It only remains for us to amend the decree and to affirm the judgment after the amendment.
It is therefore ordered, adjudged, and decreed that the amount due to the accountants be increased by adding thereto the sum of $646.25, which is to be deducted from the assets; and that the amount due to the succession, i. e., its assets, be increased by adding thereto the sum of $840.13; that these amounts be carried and distributed as ordered by the judge of the district court in regard to the other amounts allowed by him; that ijie plaintiffs and appellants are authorized to move the house on the Descamp place in case the opponents are unwilling to pay the price claimed therefor within the delay mentioned above.
With this amendment, for reasons assigned, the judgments of the district court are affirmed; half of the costs of appeal to be paid by opponents and appellees, and the other half by accountants and appellants.